In the

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT

2004 JAN -5  A 10: 11

For the District of Massachusetts

U.S. DISTRICT COURT
DISTRICT OF MASS.

Nos. 03-40282, 03-40288

MERRIMAC PAPER COMPANY, INC.,
Plaintiffs-Appellants,

v.

RALPH HARRISON and ALAN EGGERT,
Defendants-Appellants

Appeal from the United States Bankruptcy Court
for the District of Massachusetts

APPELLANTS' BRIEF

Thomas P. Smith
Caffrey & Smith, P.C.
300 Essex Street
Lawrence, MA 01840
(978) 686-6151

Jeffrey B. Renton
Gilbert & Renton LLC
23 Main Street
Andover, MA 01810
(978) 475-7580

Robert Shea
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617) 723-7700

Date:   January 2, 2004          Attorneys for Defendants-Appellants

## TABLE OF CONTENTS

I.   STATEMENT OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.  STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW . .   1

    A.   Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    B.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    A.   Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    B.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

    A.   The Claims of Harrison and Eggert Cannot Be Equitably
        Subordinated Under 11 U.S.C. § 510(c). . . . . . . . . . . . . . . . . . . . . . . . . .   7

    1.   Harrison's and Eggert's claims cannot be subordinated on a
        categorical basis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    2.   Harrison's and Eggert's claims differ from those subordinated in *SPM
        Manufacturing* and are therefore not subject to equitable subordination. . .   12

    3.   Harrison's and Eggert' claims arise in part from ERISA
        and are not subject to equitable subordination . . . . . . . . . . . . . . . . . . . . . . .   13

    B.   The ERISA Claims of Harrison And Eggert Are Not Subject
        to Mandatory Subordination Under 11 U.S.C. § 510(b) . . . . . . . . . . . . . .   15

    C.   The Harrison and Eggert Attachments Should Not
        Be Transferred to the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

    D.   The Eggert Attachment Should Not Be Avoided as a Preference
        Pursuant to Section 547 of the Bankruptcy Code . . . . . . . . . . . . . . . . . . .   18

    E.   Because The Adversary Proceeding Required Consideration Of Both
        The Bankruptcy Code and ERISA, It Should Have Been Heard
        In The District Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

## TABLE OF CASES

Adams v. Hartcon Associates, Inc., 212 BR 703 (Bankr. D. Mass. 1997) . . . . . . . . .    18

In re Baldwin-United Corp., 58 B.R. 751(S.D. Ohio 1985). . . . . . . . . . . . . . . . . . . . . .    19

In re Blondheim Real Estate, Inc., 91 B.R. 639 (Bankr.D.N.H. 1988) . . . . . . . . . . . .    16

Casco Northern Bank v. DN Assoc., 3 F.3d 512, 515 (1st Cir. 1993) . . . . . . . . . . . . .    2

Homeland Stores, Inc. v. Burris, 204 B.R. 427 (D. Del. 1997). . . . . . . . . . . . . . . . . .    20

In re Kiefer, 276 B.R. 196 (E.D. Mich. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

In re Lenco, Inc., 116 B.R. 141 (Bankr. S.D. Missouri 1990) . . . . . . . . . . . . . . . . . . .    17

Liebowitz v. Columbia Packing Co., 56 B.R. 222, 225 (D Mass. 1985) . . . . . . . . . . .    12

In re Lifschultz Fast Freight 132 F.3d 339, 348-49 (7th Cir. 1997) . . . . . . . . . . . . . .    10

In re Lissner Corporation, 115 B.R. 604 (N.D. Ill. 1990). . . . . . . . . . . . . . . . . . . . . . .    20

In re Main Street Brewing Co., Ltd., 210 B R 662 (Bankr. D. Mass. 1997) . . . . . . .    12

Martin v. Friedman, 133 B.R. 609 (N.D. OH 1991) . . . . . . . . . . . . . . . . . . . . . . . . . .    20

In re Micro-Acoustics Corp., 34 B.R. 279 (Bankr. S.D. NY 1983) . . . . . . . . . . . . . .    12

In re Mobile Steel, 563 F.2d 693, 700 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . .    9

Monarch Life Ins. Co. v. Ropes & Gray, 173 B.R. 31 (D.Mass. 1994) . . . . . . . . . . . .    2

In re Montgomery Ward Holding Corp., 272 B.R. 836 (Bankr. D. Del. 2001). . . . . . .    11

Moyer v. Official Creditors Committee of Paint and Assembly Corp.,
    2001 WL 290384 (S.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

In re New Era Packaging, 186 B.R. 329 (Bankr. D. Mass. 1995) . . . . . . . . . . . . . . .    12

Pachuta v. Unumprovident Corporation, 242 F.Supp.2d 752 (D. Haw. 2002) . . . . .    19

Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 120 S.Ct. 1951 (2000). . . . . . . . .    10

Shoreline Concrete Co., Inc. v. United States, 831 F.3d 903 (9th Cir. 1987) . . . . . . . .    14

In re SPM Manufacturing Corp., 163 B.R. 411 (Bankr. D. Mass. 1994) . . . . . . . . . .     8

In re Stern-Seligman-Prins Co., 86 B.R. 994 (Bankr. W.D. Mo. 1988) . . . . . . . . . . .     11

In re Stoecker, 179 F.3d 54, 551 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

In re Telegroup, Inc., 281 F.3d 133 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .     16

United States v. Noland, 517 U.S. 535, 116 S.Ct. 1524, 1525 (1996) . . . . . . . . . . . . .     9

In re Washington Bancorporation, 1996 U.S. Dist. LEXIS 3876 (D. DC 1996) . . . . .     16

In re Wyeth Co., 134 B.R. 920, 921 (Bankr. W.D. Mo. 1991) . . . . . . . . . . . . . . . . . . .     16

## I.  STATEMENT OF APPELLATE JURISDICTION

Defendants-Appellants Ralph Harrison ("Harrison") and Alan Eggert ("Eggert") appeal from a separate and final judgment of the United States Bankruptcy Court for the District of Massachusetts entered in an adversary proceeding brought by the debtor Merrimac Paper Company, Inc. ("MPC" or "Debtor") and in the related bankruptcy proceeding on November 7, 2004 as amended on November 12, 2004.[1]

Appellate jurisdiction is proper in this Court pursuant to 28 U.S.C. § 158(a), Federal Rules of Bankruptcy Procedure 8001 to 8020, and Local Rule 203.

## II.  STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW

### A.     **Issues Presented**

The issues presented by this appeal are the following:

1.      Did the Bankruptcy Court err in ruling that the claims of Harrison and Eggert were subject to equitable subordination under 11 U.S.C. § 510(c), granting Debtor summary judgment on Count I of the Amended Complaint and confirming a plan that incorporated this equitable subordination?

2..     Did the Bankruptcy Court err in ruling that the claims of Harrison and Eggert, except for those arising from the promissory notes of Debtor, were subject to

---

[1] The Bankruptcy Court's decision in the adversary proceeding and approval of the plan of reorganization generated two appeals by Harrison and Eggert which involve identical legal issues. Both appeals are docketed with this Cour, under the docket numbers 03-40282 and 03-40288. Appellants address the issues raised in both appeals in this brief.

equitable subordination under 11 U.S.C. § 510(b), granting Debtor partial

summary judgment on Count VI of the Amended Complaint and confirming a

plan that incorporated this subordination?

3.      Did the Bankruptcy Court err in ruling that the liens of Harrison and Eggert

should be transferred to the Debtor under 11 U.S.C. § 501(c)(2), granting Debtor

partial summary judgment on Count III of the Amended Complaint, and

confirming a plan that incorporated this transfer?

4.      Did the Bankruptcy Court err in ruling that Eggert's attachment was a preferential

transfer under 11 USC § 547, granting summary judgment on Count IV of the

Amended Complaint, and confirming a plan that avoided this attachment as a

preferential transfer?

5.      Did the Bankruptcy Court err in ruling that it had jurisdiction to rule in the

Adversary Proceeding in light of a filed motion to withdraw the reference?

**B.      <u>Standard of Review</u>**

The standard of review to be employed by the Court in is the general standard of review

for an appeal from the Bankruptcy Court under 28 U.S.C. § 158, that is this Court must consider

the application of the law by the Bankruptcy Court *de novo* but accept the factual findings of the

Bankruptcy Court unless clearly erroneous.   <u>Casco Northern Bank</u> v. <u>DN Assoc.</u>, 3 F.3d 512,

515 (1st Cir. 1993);  <u>Monarch Life Ins. Co.</u> v. <u>Ropes & Gray</u>, 173 B.R. 31, 35 (D.Mass. 1994).

As Judge Rosenthal correctly recognized below, "The facts in this case are not in

dispute."  A. 164.[2]   As a result, this Court's review of the decision below is *de novo*.

_____

[2] Citations to Appellants' Appendix, filed herewith, are set forth as "A. (page number)."

III.    **STATEMENT OF THE CASE**

A.    **Procedural History**

On March 17, 2003, MPC filed a voluntary petition pursuant to Chapter 11 of the United States Bankruptcy Code.  A. 164.

On June 20, 2003, MPC filed an adversary proceeding against two former employees (Harrison and Eggert) who had, prior to the bankruptcy, filed civil actions against MPC for payment of promissory notes issued to them in connection with an ERISA plan.  MPC's complaint in the adversary proceeding, as amended, stated six counts: Count I (Equitable Subordination under 11 USC § 501(c)); Count II (Avoidance of Obligations to Harrison and Eggert under M.G.L. c. 109A, § 1); Count III (Avoidance of Harrison and Eggert Attachments under 11 U.S.C. § 501(c)(2)); Count IV (Avoidance of Eggert Attachment as a Preferential Transfer under 11 USC § 547); Count V (Recovery of Property from Harrison as a Fraudulent Transfer); and Count VI (Subordination of the Claims under 11 USC § 501(b)).  A. 90 to 101. On July 25, 2003, Harrison and Eggert moved to withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157.

On October 15, 2003, MPC moved for partial summary judgment on Counts I, II, IV and VI of the Amended Complaint, which Harrison and Eggert opposed.  On November 7, 2003, the Bankruptcy Court issued an order granting summary judgment in favor of MPC on Counts I, III and IV of the Amended Complaint, denying summary judgment on Count VI with respect to claims for non-payment of notes and allowing summary judgment on Count VI with respect to other claims.  A. 163-183.

The Bankruptcy Court also approved a plan of reorganization that subordinated the

- 3 -

claims of Harrison and Eggert to the claims of general creditors of MPC.[3]

**B.    Statement of Facts**

1.      This proceeding involves the rights of Harrison and Eggert under ERISA to the

Employee Stock Ownership Plan ("ESOP") benefits they accrued during their long tenures as

employees of MPC.  This proceeding is closely related to the prior actions pending in the District

Court for the District of Massachusetts in which Eggert and Harrison have brought claims to

recover their vested ESOP benefits, and for breaches of contract and of fiduciary duty against

MPC, the ESOP plan, and the individual ESOP plan fiduciaries.  See Eggert, et al. v. Merrimac

Paper Co., Inc., et al., C.A. No. 03-10048-RBC (D.Mass.);  Harrison v. Merrimac Paper Co., Inc.,

C.A. No. 1:03-CV-10209-MLW

2.      MPC is a duly organized Delaware corporation with a principal place of business

at 9 South Canal Street, Lawrence, Essex County, MA 01842.

3.      The Merrimac Paper Company Leveraged Employee Stock Ownership Plan and

Trust (the "ESOP") is, and at all times relevant hereto was, intended to qualify as (i) a stock bonus

plan under Section 401(a) of the Internal Revenue Code of 1986 (the "Code"), (ii) an employee

pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income

Security Act of 174, as amended ("ERISA"), and (iii) an employee stock ownership plan with the

meaning of Section 4975(e)(7) of the Code and Section 407(d)(6) of ERISA.

4.      The terms of the ESOP provided: (i) normal retirement age was 65 years; (ii) all

benefits were to be distributed either in whole common stock of the Debtor, or in cash, or in a

---

[3]The Bankruptcy Court did require, as part of the plan of reorganization, that sufficient amounts be held in escrow to pay Harrison and Eggert an appropriate distribution should this Court find that the Bankruptcy Court erroneously subordinated Harrison and Eggert's claims.

combination thereof; (iii) all benefits were to be payable in a lump sum; (iv) upon termination of employment of a participant for any reason other than death, permanent disability or attaining normal retirement age, the participant's vested account balance were to be payable on the 60th day following the end of the calendar year in which such employment termination occurs; (v) participants were to have the right to sell or "put" shares distributed to him or her back to the ESOP or to MPC (as the ESOP sponsor); (vi) in the event that participants elected to sell or "put" his or her shares, the ESOP or MPC could have elected to pay for the shares in a lump sum or in 5 (or fewer) equal annual installments - provided however, that if installment payments were elected, a fair interest rate was to be paid and adequate security was to be provided  The requirement of adequate security is also contained in ERISA.

<u>Harrison</u>

5.      Harrison resides in Andover, Massachusetts.  From 1963 to 1999, Harrison was employed by MPC.  From the inception of the ESOP until his separation from service, contributions were made on behalf of Harrison to the ESOP and Harrison looked to the ESOP as his primary source of retirement funds.  Harrison was never an officer or director of MPC, nor a majority owner.  MPC made no showing of any inequitable conduct on the part of Harrison.

6.      In December 1999, Harrison, then a 36-year employee, separated from service with MPC and applied for a distribution of his ESOP benefits by electing to "put" his vested common stock back to MPC or the ESOP under the terms of the ESOP.

7.      Harrison received a cash payment of $200,000 and a promissory note in the original principal amount of $916,300 plus interest at the rate of 8.5% per annum in three annual installments (the "Harrison Note").

- 5 -

8.    An initial installment in the principal amount of $305,434, plus accrued interest, was paid to Harrison on January 12, 2001.

9.    The second installment was due on July 19, 2002, but was not paid.   Despite timely demands, no further payment was made and the Harrison Note is now in default.

10.    On September 6, 2002, Harrison commenced civil action in Essex Superior Court against MPC and obtained an attachment against MPC in the amount of $610,000 which was duly recorded at the Essex County North Registry of Deeds on September 12, 2002.

11.    This action was removed to federal court on February 5, 2003 and is pending under the name Harrison v. Merrimac Paper Co., Inc.,  C.A. No. 1:03-CV-10209-MLW.

Eggert

12.    Eggert resides in Greer, South Carolina.  From 1975 to 2000, Eggert was employed by MPC.  From the inception of the ESOP until Eggert's separation from service, contributions were made to the ESOP in Eggert's name and Eggert looked to the ESOP as his primary source of retirement funds.   Eggert was never a majority owner of MPC.  MPC made no showing of any inequitable conduct on the part of Harrison

13.    In November 2000, Eggert separated from service after 25 years of employment.

14.    In December 2000, Eggert applied for a distribution of his ESOP benefit and exercised his right to "put" his vested common stock back to MPC or the ESOP.

15.     Based on an independent valuation report prepared on behalf of MPC and/or the ESOP, Eggert's interest in the ESOP was valued at $1,555,500.

16.    On or about December 29, 2000, Eggert received a promissory note signed by a trustee of the ESOP under which Eggert was promised $1,555,500, plus interest at the rate of

- 6 -

8.5% per annum, to be paid in five equal installment of 20% each commencing on December 29, 2001.

17.    Eggert never received a single share of stock and has not received a single payment under the promissory note.

18.    On January 29, 2003, the District Court of Massachusetts issued an attachment in favor of Eggert and against property of MPC in the amount of $1,829,935 which was duly recorded at the Essex County Registry of Deeds.

<u>ERISA Litigation</u>

19.    On January 8, 2003, Defendants commenced an action in United States District Court for the District of Massachusetts against MPC, the ESOP and the administrators and trustees of the ESOP.    Defendants' complaint contains the following claims: Count I (Unlawful Denial of Benefits under ERISA, 29 U.S.C. § 1001, <u>et seq.</u>);    Count II (Breach of Duties under ERISA, 29 U.S.C. §§ 1109 and 1132(a)(3)); Count III (Breach of Duties under ERISA, 29 U.S.C. §§ 1109 and 1132(a)(3)); and Count IV (Breach of Contract).


IV.    **ARGUMENT**

A.    <u>**The Claims of Harrison and Eggert Cannot Be Equitably Subordinated Under 11 U.S.C. § 510(c)**</u>

The Bankruptcy Court erred in holding that Harrison's and Eggert's claims against MPC were subject to *per se* equitable subordination under 11 U.S.C. § 510(c) without any showing that Harrison and Eggert had engaged in any inequitable activity.    In subordinating Defendants' claims, the Bankruptcy Court relied solely on a 1994 decision of Bankruptcy Court of the District

- 7 -

of Massachusetts, In re SPM Manufacturing Corp., 163 B.R. 411 (Bankr. D. Mass. 1994), and its

progeny.  The Bankruptcy Court did not make any finding of inequitable conduct on the part of

Harrison or Eggert.  The Bankruptcy Court's decision must be reversed for two independent

reasons.

First, the SPM Manufacturing decision is contrary to the great weight of precedent,

including two recent United States Supreme Court cases which have decisively rejected its

rationale.  As a result, this Court should overrule the Bankruptcy Court, forbid the categorical

subordination of claims under 11 U.S.C. § 510(c), and correct the aberrant Bankruptcy Court case

law in this District permitting subordination of claims without any showing of inequitable

conduct.

Second, even if SPM Manufacturing and its progeny were correct, those cases involved

routine stock redemption agreements made by *controlling* shareholders in situations where the

debtor company received no consideration for its issuance of notes.  Those cases are easily

distinguished from the present situation where: (i) Defendants' claims against MPC arise from an

ESOP plan, (ii)  MPC received consideration both in fulfilling its statutory duties and in obtaining

years of loyal service from its employees; and (iii) Defendants were in no way able to control or

manipulate MPC to the detriment of general creditors.  As a result, the SPM Manufacturing cases

do not provide a basis for subordination of Harrison's and Eggert's claims.

### 1.    Harrison's and Eggert's claims cannot be subordinated on a categorical basis.

Section 510(c) provides:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the
court may - (1) under principles of equitable subordination, subordinate for purposes of
distribution all or part of an allowed claim to all or part of another allowed claim or all or

part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c). "The vast majority of courts . . . require either fraudulent or wrongful conduct on the part of the claimant before utilizing § 510(c)." In re Envirodyne Industries, Inc. 176 B.R. 825, 829 (Bankr. N.D. Ill. 1995). However, the Bankruptcy Court subordinated Harrison and Eggert's claims categorically without any showing of wrongful or fraudulent conduct on their part relying solely upon SPM Manufacturing Corp. In that 1994 decision, Judge Queenan allowed the subordination of a stock redemption agreement held by the family foundation of the controlling shareholders without an explicit finding of misconduct. SPM Manufacturing Corp 163 B.R. at 416. Here, the Bankruptcy Court subordinated an entire class of claimants, including Harrison and Eggert, without any showing of inequitable conduct on their part. This type of *per se* equitable subordination has been rejected by two subsequent Supreme Court decisions, and so cannot form the basis for subordination of Defendants' claims.

In United States v. Noland, 517 U.S. 535, 116 S.Ct. 1524, 1525 (1996), the Supreme Court explicitly examined "the scope of a bankruptcy court's power of equitable distribution under 11 USC §510(c)" and held that "the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." The Supreme Court cited with approval In re Mobile Steel, 563 F.2d 693, 700 (5th Cir. 1977) which required, before any equitable subordination: (i) a showing that the creditor had engaged in some type of inequitable conduct, (ii) that the misconduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant" and (iii) that the subordination "not be inconsistent with the provisions of the Bankruptcy Act." Noland, 116 S.Ct. at 1526 (citations omitted). None of these

- 9 -

requisite elements are present in this case.  Harrison and Eggert engaged in no inequitable conduct

which conferred any unfair advantage upon them *vis-a-vis* general creditors or the Debtor.

     In <u>Noland</u>, the Supreme Court noted that "the bankruptcy court . . is not free to adjust the

legally valid claim of an innocent party who assets the claim in good faith merely because the

court perceives that the result is inequitable." <u>Id.</u> (citations omitted).   The Supreme Court

rejected an approach to equitable subordination that subordinates claims on a class-wide basis,

and strongly suggested that misconduct must generally be found before subordination. <u>Id.</u> at 1528

( "Given our conclusion that the Sixth Circuit's rationale was inappropriately categorical in

nature, we need not decide today whether a bankruptcy court must always find creditor

misconduct before a claim be equitably subordinated.")

     In <u>Raleigh v. Illinois Dept. of Revenue</u>, 530 U.S. 15, 120 S.Ct. 1951 (2000), the Supreme

Court reaffirmed this decision, holding again that claims cannot be equitably subordinated on a

class wide basis in contravention of the claimant's underlying legal rights.   The Court stated:

> Bankruptcy courts do indeed have some equitable powers to adjust rights between
> creditors.  <u>See, e..g.,</u> § 510(c)(equitable subordination).  That is, within the limits of the
> Code, courts may reorder distributions from the bankruptcy estate, in whole or in part, for
> the sake of treating legitimate claimants to the estate equitably.  But the scope of a
> bankruptcy court's equitable power must be understood in the light of the principle of
> bankruptcy law discussed already, that the validity of a claim is generally a function of
> underlying substantive law.  Bankruptcy courts are not authorized in the name of equity to
> make wholesale substitution of underlying law controlling the validity of creditors'
> entitlements, but are limited to what the Bankruptcy Code itself provides

<u>Id.</u>, 530 U.S. at 24-25.  Thus, there is no basis for the Bankruptcy Court's categorical .

subordination of Defendants' claims.

     The great majority of lower courts have followed the Supreme Court in rejecting the

attempt to equitably subordinate a class of claims.  <u>See, e.g.,</u>  <u>In re Lifschultz Fast Freight</u> 132

- 10 -

F.3d 339, 348-49 (7th Cir. 1997)(vacating bankruptcy court's equitable subordination of a loan, the

Seventh Circuit noted "the power of equitable subordination must not have the inevitable result of

equitably subordinating" every claim within a particular class; "We conclude that inequitable

conduct is still the general rule for equitable subordination . . .. Extraordinary circumstances

might provide an exception. . . but we believe that almost any such exception would arguably also

involve other misconduct of some sort."); In re Stoecker, 179 F.3d 54, 551 (7th Cir. 1999)("the

power of equitable subordination . . . must be exercised case by case and not over a whole class of

claims.") aff'd sub nom. Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 120 S.Ct. 1951

(2000); Moyer v. Official Creditors Committee of Paint and Assembly Corp., 2001 WL 290384

(S.D. Ill. 2001)(vacating a bankruptcy court decision subordinating stock redemption payments;

"The Bankruptcy Court elevated what was intended to be a case-by-case exception to the rule

requiring inequitable conduct for equitable subordination to a categorical rule that all claims

stemming from a stock redemption must be placed at the end of the line during a bankruptcy

distribution.  In so doing, the court neglected to consider other factors that may be relevant to or

make other factual findings that may require that all or part of Appellant's claims be paid before

those of the general unsecured creditors."); In re Stern-Seligman-Prins Co., 86 B.R. 994 (Bankr.

W.D. Mo. 1988)(refusing to equitably subordinate stock repurchase agreement); In re

Montgomery Ward Holding Corp., 272 B.R. 836, 845-46 (Bankr. D. Del. 2001)(Debtor's claim

for subordination "is bereft of any allegation other than that the claim is based on a note it issued

as payment to redeem stock.  This alone does not form the basis or relief under § 510(c)").

 In contrast to many of the persuasive decisions refusing categorical equitable

subordination cited above, all of the decisions relied upon by the Bankruptcy Court to subordinate

- 11 -

Defendants' claims predate the Supreme Court's 2000 decision in <u>Raleigh</u>.  As a result, the Court

should reverse the Bankruptcy Court's decision and hold that Harrison and Eggert's claims are not

subject to equitable subordination under 11 U.S.C. § 510(c).

### 2.    Harrison's and Eggert's claims differ from those subordinated in SPM Manufacturing and are therefore not subject to equitable subordination

Even if the Court were to find that <u>SPM Manufacturing</u> and its progeny are good law,

Harrison and Eggert's claims can be readily distinguished, on an equitable basis, from the routine

stock redemption claims subordinated in those cases.  In those cases, the stock redemption claims

arose from transactions by controlling shareholders in close corporations for which the

shareholder gave, and the company received,  no consideration.  <u>See, e.g.,</u>  <u>In re SPM</u>

<u>Manufacturing Corp.</u>, 163 B.R. 411, 413 (Bankr. D. Mass. 1994) (claimant was family foundation

seeking redemption of stock bequeathed by the controlling shareholder; court noted that in these

circumstances "an argument could perhaps be mounted that the act of creating redemption debt is

itself inequitable"); <u>Liebowitz</u> v. <u>Columbia Packing Co.</u>, 56 B.R. 222, 225 (D Mass. 1985)(stock

repurchase agreement at issue "was made among the three sole stockholders of a close

corporation.  The Agreement thus does not represent an arm's length bargain between a separate

enterprise and its employees."); <u>In re Main Street Brewing Co., Ltd.</u>, 210 B R 662 (Bankr. D.

Mass. 1997)(claimant was the relative of the owner of the corporation whose redemption

agreement contained a 100% markup over any amount invested); <u>In re New Era Packaging</u>, 186

B.R. 329 (Bankr. D. Mass. 1995) (redemption agreement in favor of majority owners of a debtor

subordinated because "the company became obligated to the stockholder, but received nothing in

return."); <u>In re Micro-Acoustics Corp.</u>, 34 B.R. 279, 282 (Bankr. S.D. NY 1983)(redemption

- 12 -

agreement of 35% owner subordinated, but noted that "a shareholder's unsecured claim against a corporate debtor, whether for goods sold, bona fide loans . . . or wages due as an employee should not be subordinated by Code § 510(c)(1) to the claims of unsecured creditors absent a showing of inequitable conduct.")

Here, by contrast, Defendants had no control over MPC, engaged in no misconduct, and did not receive their vested ERISA-protected benefits without consideration.  Rather, Defendants earned their ERISA benefits during decades of hard work in reliance upon MPC's promise to pay. As such, Defendants have at least as strong an equitable claim to share in the MPC's distribution of assets as any general creditor   Morever, unlike the agreements subordinated in the cases relied upon by MPC, MPC's agreements with Harrison and Eggert were made at arm's length.   MPC received additional consideration by fulfilling its obligations under ERISA, and received a benefit by issuing notes in lieu of paying the vested benefits immediately in cash.

Under these circumstances, there is no equitable reason to subordinate Defendants' claims. As a result, this Court should reverse the Bankruptcy Court's decision and hold that Harrison and Eggert's claims are not subject to equitable subordination under 11 U.S.C. § 510(c).

### 3.   Harrison's and Eggert' claims arise in part from ERISA and are not subject to equitable subordination

In support of equitable subordination under 11 U.S.C. § 510(c) relies exclusively upon case authorities that dealt with routine stock redemptions.  Not one of the cases relied upon to equitably subordinate stock redemption claims involved ERISA-protected rights to retirement benefits, like those at issue here.   Moreover, the equities in this case clearly favor Defendants. Defendants have done absolutely nothing wrong.  By way of example only, Defendants, under

- 13 -

both ERISA and the ESOP, were entitled to payment of their vested retirement benefits upon

termination of their employment.  MPC and the ESOP, at their option, had the right to pay

Defendants' vested retirement benefits over time, but only if they issued an "adequately secured"

promissory note. See Plan Document, § 10.04.  See also, 26 CFR 54.4975-7(b)912)(iv)("Payment

terms.  The provisions for payment under a put option must be reasonable.  The deferral of

payment is reasonable if adequate security and a reasonable interest rate are provided.").

Notwithstanding, MPC issued Defendants notes without any security.  Subordination of

Defendants' claims would complete MPC's unlawful evasion of its ERISA duties.

Consequently, equitable subordination of rights established by ERISA exceeded the

equitable jurisdiction of the Bankruptcy Court:

> A court of equity . . . Must be guided by the established rules and precedents.  Where
> rights are defined and established by existing legal principles, they may not be changed or
> unsettled in equity.  A court of equity is thus bound by any explicit statute or directly
> applicable rule of law regardless of its view of the equities.  Equity courts cannot
> disregard, or in effect repeal, statutory and constitutional provisions.

27 American Jurisprudence (2d Ed. 1996) at § 109.  See, e.g., Shoreline Concrete Co., Inc. v.

United States, 831 F.3d 903 (9th Cir. 1987)("Courts of equity are bound to follow express

statutory commands to the same extent as are courts of law.  Bankruptcy courts are no more

entitled to ignore the law than are other courts of equity.")

Because Defendants' rights arise under the ERISA statute, they are not equivalent to the

routine stock redemption agreements by controlling shareholders dealt with in the SPM

Manufacturing line of cases cited by MPC.  As such, they are not subject to equitable

subordination.  As a result, this Court should reverse the Bankruptcy Court's decision and hold

that Harrison and Eggert's claims are not subject to equitable subordination under 11 U.S.C. §

- 14 -

510(c).

**B.    The ERISA Claims of Harrison And Eggert Are Not Subject to Mandatory Subordination Under 11 U.S.C. § 510(b)**

The Bankruptcy Court correctly held that the Harrison's and Eggert's claims based on the promissory notes issued to redeem Harrison's and Eggert's ESOP stock were not subject to subordination under 11 U.S.C. §510(b) and denied MPC's motion for summary judgment on Count VI "for those claims for non-payment of the Stock Redemption Notes." A. 183.    After reviewing the applicable precedent, the Bankruptcy Court correctly held:

> In the instant case, the Former Employees are no longer shareholders.  They have relinquished their stock certificates; they possess no indicia of ownership, and importantly if the stock of the Debtor was to increase in value, they cannot participate in the appreciation.  They are noteholders whose claims arising from the default under their notes are not subject to the mandatory subordination of section 510(b).

A. 176.

However, the Bankruptcy Court was incorrect to subordinate Harrison's and Eggert's ERISA claims under 11 U.S.C. §510(b).  Defendants' ERISA claims are not those of equity holders seeking by a claim of fraud or rescission to convert an equity interest into a higher priority claim - the problem that § 510(b) was crafted to address.  Rather, Harrison and Eggert simply seek to secure statutory ERISA rights as holders of debt issued pursuant to ERISA.  They do not seek to upgrade their status from equity holders to debt holders.  Thus, their claims are not subject to subordination under 11 USC § 510(b).

The most closely applicable case is In re Montgomery Ward Holding Co., 272 B.R. 836 (Bankr. D. Del 2001).    There, as here, a debtor sought to subordinate a stock redemption agreement given to a former employee.  The court stated:

- 15 -

The critical inquiry here is whether a claim based solely on the nonpayment of a promissory note issued by a debtor to consummate the repurchase of its own stock is one for damages "arising from" the purchase or sale of its securities. Under the plain language of § 510(b) I hold that it is not.

Id. 841.   The Court held that, as here, the debtor's

argument is premised on a distended interpretation of the causal relationship between the purchase or sale of the securities and the type of claim subject to subordination. The plain language of § 510(b) is more limited. It applies only to a claim that directly concerns the stock transaction itself, i.e., the actual purchase and sale of the debtor's security must give rise to the contested claim.

Id. at 842.   After discussing why the plain language, legislative history and purpose of § 510(b)

did not support subordination of a stock redemption agreement, the court noted that "the few

courts that have considered statutory subordination in light of a claim based solely on enforcement

of a debt instrument have concluded § 510(b) does not apply." Id. at 843.   Those other cases

include: In re Wyeth Co., 134 B.R. 920, 921 (Bankr. W.D. Mo. 1991)(refusing to subordinated

claims based on notes issued to redeem stock because claim neither fall under the plain language

of § 510(b) nor "bear any relationship whatever" to its underlying policy concerns); In re

Blondheim Real Estate, Inc., 91 B.R. 639, 640-42 (Bankr.D.N.H. 1988)(section 510(b) does not

apply to claims based on debtors notes issued to redeem stock); In re Washington Bancorporation,

1996 U.S. Dist. LEXIS 3876 (D. DC 1996); In re Stern-Seligman-Prins Co., 86 B.R. 994,

1000(Bankr. W.D. Mo. 1988)(valid stock redemption agreement not subject to subordination

under § 510(b)).

The cases relied upon by MPC do not counsel a different result, but in fact support a

refusal to subordinate Defendants' ERISA claims. For example, in In re Telegroup, Inc., 281 F.3d

133 (3rd Cir. 2002), the Third Circuit approved the subordination of a claim by investors that the

- 16 -

debtor had failed to register stock.  The Court focused not on the time that this claim arose,  but rather on the claimants' status as equity investors at the time of bankruptcy.  After examining its legislative history and purpose, the Court noted that Section 510(b)  "appears intended to prevent disappointed shareholders from recovering the value of their investment by filing bankruptcy claims predicated on the issuer's unlawful conduct at the time of issuance, when the shareholders assumed the risk of business failure by investing in equity **rather than debt instruments**."  Id. at 141 (emphasis supplied).  The Court subordinated the claims of the claimant Telegroup stockholders "to prevent disaffected equity investors from recouping their investment losses in parity with general unsecured creditors."  Id at 142.   The Court found this to comport with the statute's intent "because claimants retained the right to participate in corporate profits if [the debtor] succeeded."  Id.  In contrast with the claimants in Telegroup, Harrison and Eggert had (long years before MPC's bankruptcy) ceased to be equity holders.   As such, Section 510(b) does not provide a basis for subordinating their ERISA claims.

Likewise, the claims subordinated in In re Lenco, Inc., 116 B.R. 141 (Bankr. S.D. Missouri 1990) were claims brought on behalf of stockholders who held equity at the time of the bankruptcy.  Although Lenco made passing reference to ERISA, it was the claimants status as shareholders at the time of the bankruptcy that was determinative.

As the Bankruptcy Court found, Harrison and Eggert were not shareholders at the time of MPC's filing.  Their ERISA claims are therefore not based on their status as shareholders, and not subject to mandatory subordination under § 510(b).  As a result, the Court should reverse the Bankruptcy Court's decision and hold that Harrison and Eggert's ERISA claims are not subject to mandatory subordination under 11 U.S.C. § 510(b).

- 17 -

C.    **The Harrison and Eggert Attachments Should Not Be Transferred to the Debtor**

As set forth in Points IV.A and IV.B above, Harrison's and Eggert's claims are not subject to equitable subordination under 11 USC § 510(c) or mandatory subordination under 11 USC §510(b).   Thus, Harrison's and Eggert's liens may not be transferred to the estate under 11 USC § 510(c)(2).   For this reason, the Court should reverse the Bankruptcy Court's decision and hold that Harrison's and Eggert's liens cannot be transferred to the Debtor under 11 U.S.C. § 510(c)(2).

D.    **The Eggert Attachment Should Not Be Avoided as a Preference Pursuant to Section 547 of the Bankruptcy Code**

Because the MPC is statutorily required under ERISA and under the terms of the ESOP itself to provide adequate security, Eggert possessed a statutory, equitable or de facto lien as of December 2000 when his note was issued.   Eggert's security interest is not a preference and therefore may not be avoided for three reasons.  One, by operation of law under ERISA, Eggert possesses a statutory, equitable or de facto lien and so is fully secured and the attachment is not preferential.  Adams v. Hartcon Associates, Inc., 212 BR 703, 713 (Bankr. D. Mass. 1997)(payments to a fully secured creditor are not preferential).   Two, Eggert's statutory, equitable or de facto lien arose in December 2000, which is well before the look back period for preferential transfers. 11. USC 547.   Three, statutory liens such as the one possessed by Mr. Eggert under ERISA is not avoidable for any of the reasons set forth in 11 USC § 545. As a result, the Court should reverse the Bankruptcy Court's decision and hold that Eggert's attachment is not avoidable as a preference.

- 18 -

E.    **Because The Adversary Proceeding Required Consideration Of Both The Bankruptcy Code and ERISA, It Should Have Been Heard In The District Court.**

Matters requiring consideration of both bankruptcy and non-bankruptcy federal law **must** be heard in the District Court.   28 USC § 157(d) provides, in pertinent part:

> The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 USC § 157(d)(emphasis supplied).   It is beyond cavil that ERISA is a law of the United States that regulates activities affecting interstate commerce. 29 USC § 1001(b)("It is hereby declared to be the policy of this chapter to protect interstate commerce"); Pachuta v. Unumprovident Corporation, 242 F.Supp.2d 752, 756-57 ("Congress enacted ERISA for the purpose of protecting interstate commerce").

There are three requirements for mandatory withdrawal under Section 157(d): (i) actual parties seek the withdrawal; (ii) the request for withdrawal was timely made; and (iii) the adversary proceeding requires the consideration of both the bankruptcy code and non-bankruptcy federal law.   See, e.g., In re Baldwin-United Corp., 58 B.R. 751(S.D. Ohio 1985).   The requirements were easily met in this action, since Defendants sought withdrawal, have made a timely request for withdrawal (on July 25, 2003 shortly after service of the Adversary Complaint), and this adversary proceeding required consideration of both the bankruptcy code and issues arising under ERISA.

Accordingly, the Bankruptcy Court should have refrained from determining the issues and deferred to the District Court. See, e.g., In re Kiefer, 276 B.R. 196 (E.D. Mich. 2002)(withdrawal of reference warranted where resolution of the adversary proceeding required consideration of

- 19 -

ERISA-imposed fiduciary duties); Homeland Stores, Inc. v. Burris, 204 B.R. 427 (D. Del. 1997) (withdrawal of reference mandated where adversary proceeding required consideration of ERISA issues); Martin v. Friedman, 133 B.R. 609 (N.D. OH 1991)(same); In re Lissner Corporation, 115 B.R. 604 (N.D. Ill. 1990)(withdrawal of reference is required where case involved a potential conflict between a party's ERISA rights and claims of equitable subordination).

Although this issue has been rendered moot with respect to the legal issues on appeal due to the Bankruptcy Court's decision and this subsequent appeal to the appropriate forum, it should inform the District Court's consideration of the issues involved and perhaps provide a less deferential standard of review if it determines that all matters should have been heard by it in the first instance.

- 20 -

## V.    CONCLUSION

For all of the foregoing reasons, this Court should reverse the Bankruptcy Court's

decision, hold that Harrison's and Eggert's claims are not subject to equitable or mandatory

subordination, hold that Harrison's and Eggert's attachments may not be transferred to the Debtor,

and order that Harrison and Eggert participate in the distribution of in accordance with their rights

as secured and unsecured creditors of Debtor.

RALPH HARRISON and
ALAN R. EGGERT,

By their attorneys,

Thomas P. Smith (BBO #555513)
Caffrey & Smith, P.C.
300 Essex Street
Lawrence, MA 01840
(978) 686-6151

Jeffrey B. Renton, (BBO #554032)
Gilbert & Renton, LLC
23 Main Street
Andover, MA 01810
(978) 475-7580

Robert J. Shea (BBO #546795)
Rudolph Friedman, LLP
92 State Street
Boston, MA 02109
(617) 723-7700

- 21 -

## CERTIFICATE OF SERVICE

I, Thomas P. Smith, hereby certify that I served the foregoing document on the following parties to this appeal or their counsel by first class mail, postage prepaid on December 31, 2004

James F. Wallack, Esq.
Goulston & Storrs
400 Atlantic Ave
Boston, MA 02110

Charles R. Dale, III, Esq.
Gadsby & Hannah LLP
225 Franklin Street
Boston, MA 02110

Thomas P. Smith