# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| MERRIMAC PAPER COMPANY, INC., *et al.* | Case No. 03-41477-JBR to 03-41479-JBR |
| | |
| Debtors. | Jointly Administered |
| | |
| RALPH HARRISON, ALAN EGGERT, | |
| | |
| Appellants, | |
| | |
| v. | Civil Case No. 4:03-cv-40282-NMG |
| | |
| MERRIMAC PAPER COMPANY, INC. | |
| | |
| Appellee. | |

## BRIEF OF APPELLEE, MERRIMAC PAPER COMPANY, INC.

Counsel to Appellee:

James F. Wallack, Esq. (BBO# 557061)
Rafael Klotz, Esq. (BBO# 649456)
Christian T. Haugsby, Esq. (BBO# 651191)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA  02110-3333
Tel:  (617) 482-1776
Fax:  (617) 574-4112

# TABLE OF CONTENTS

I. Statement of the Case .........................................................................................................1

II. Statement of the Facts ......................................................................................................2

III. Standard of Review..........................................................................................................6

IV. Argument .........................................................................................................................7

       A.     The Bankruptcy Court Properly Subordinated Appellants' Claim Under 11 U.S.C.
              §510(c)...........................................................................................................................7

           1.   Introduction..................................................................................................7

           2.   The Uniform Authority in this Circuit Mandates
               Equitable Subordination of Appellants' Claims
               under 11 U.S.C. §510(c) .....................................................................8

           3.   The Supreme Court's Holdings in <u>Noland</u> and
               <u>Raleigh</u> Support Equitable Subordination of
               Stock Redemption Claims Under 11 U.S.C.
               §510(c) ...............................................................................................13

           4.   Under the Undisputed Facts of This Case, the
               Bankruptcy Court Properly Subordinated
               Appellants' Stock Redemption Claims........................................16

       B.     The Bankruptcy Court Properly Found that Section 510(b) Requires Subordination
              of Appellants' ERISA-related Claims ...............................................................19

       C.     The Liens of Appellants Must be Transferred to the Debtors' Estate Pursuant to 11
              U.S.C. §510(c)(2)...........................................................................................20

        D.     Eggert's Attachment is Avoidable as a Preferential Transfer Pursuant to 11 U.S.C.
               §547................................................................................................................21

       E.     The Bankruptcy Court Properly Exercised its Jurisdiction to Consider the
              Summary Judgment Motion.............................................................................22

       F.     Conclusion .........................................................................................................24

GSDOCS-1316172-5

# TABLE OF AUTHORITIES

## CASES

Burden v. United States (In re Burden), 917 F.2d 115 (3rd Cir. 1990) ........................................ 12

Casco Northern Bank v. DN Assoc., 3 F.3d 512 (1st Cir. 1993)...................................................... 7

In re Dino & Artie's Automatic Transmission Co., 68 B.R. 264 (Bankr.
S.D.N.Y. 1986) .................................................................................................................................. 12

In the matter of Envirodyne Industries, Inc., 79 F.3d 579 (7th Cir. 1996) ................................ 12

Keith v. Kilmer, 261 F. 733 (1st Cir. 1919)................................................................................ 8, 9

Liebowitz v. Columbia Packing Co., 56 B.R. 222 (D.Mass. 1985)........................................... 9, 10

In re Main Street Brewing Co., Ltd., 210 B.R. 662 (Bankr. D. Mass. 1997) ...................... Passim

Matthews Bros. v. Pullen, 268 F. 827 (1st Cir. 1920) ............................................................ Passim

Monarch Life Ins. Co. v. Ropes & Gray, 173 B.R. 31 (D. Mass. 1994) ....................................... 7

In re Montgomery Ward Holding Co., 272 B.R. 836 (Bankr.D.Del. 2001) ............................... 20

In re New Era Packaging, Inc., 186 B.R. 329 (Bankr. D. Mass. 1995) .............................. Passim

Robinson v. Wagenman, 75 F.2d 756 (5th Cir. 1935).................................................................... 10

In re SPM Manufacturing Corporation, 163 B.R. 411 (Bankr. D. Mass.
1994) .............................................................................................................................................. Passim

Thomas E. Raleigh, Chapter 7 Trustee of William J. Stoecker v. Illinois
Department of Revenue, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13
(2000)...................................................................................................................................... 13, 15, 16

In re Trimble Company, 339 F.2d 838 (3d Cir. 1964)................................................................... 12

United States v. Noland, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748
(1996) .......................................................................................................................................... Passim

In re Wyeth Co., 134 B.R. 920 (Bankr. W.D. Mo. 1991)............................................................ 20

GSDOCS-1316172-5

# STATUTES

11 U.S.C. § 502 ................................................................................................ 19

11 U.S.C. § 510 ................................................................................................ 22

11 U.S.C. § 510(b) ................................................................................... Passim

11 U.S.C. § 510(c) ................................................................................... Passim

11 U.S.C. § 510(c)(1) .................................................................................. 18, 20

11 U.S.C. § 510(c)(2) ............................................................................... Passim

11 U.S.C. § 547 ..................................................................................... 20, 21, 22

11 U.S.C. § 547(b) ................................................................................. 2, 21, 24

11 U.S.C. § 550 .................................................................................................. 2

28 U.S.C. §§ 157(b)(2)(A), (B), (F), (K) and (O) ......................................... 22

28 U.S.C. §§ 157(b)(2)(L) .............................................................................. 22

28 U.S.C. § 158 ................................................................................................. 6

28 U.S.C. § 1334(c) ....................................................................................... 23

29 U.S.C. § 1101 .............................................................................................. 1

29 U.S.C. § 1144(d) ....................................................................................... 18

Fed. R. Bankr. P. 5001(c) ............................................................................. 23

Fed. R. Bankr. P. 7054(b) ............................................................................... 1

# OTHER

H.R. Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), reprinted in 1978
    U.S.C.C.A.N. 5787, 5963, 6315, 6452 ................................................... 8

GSDOCS-1316172-5

## I.    STATEMENT OF THE CASE

This appeal[1] arises from the Amended Final Judgment Under Fed.R.Bankr.P. 7054(b) on Counts I, III, IV and V (the "Judgment") and the Memorandum of Decision on Plaintiff's Motion for Partial Summary Judgment and Objection to Confirmation of First Amended Plan of Reorganization, as modified, entered by Bankruptcy Judge Joel B. Rosenthal on November 7, 2003 (the "Memorandum of Decision" and, together with the Judgment, collectively, the "Bankruptcy Court Decision").  Appellee's Appendix at pp. 1-22.[2]  In the Bankruptcy Court Decision, the Bankruptcy Court found that the claims of appellants Ralph Harrison ("Harrison") and Alan Eggert ("Eggert") (together, the "Appellants") arising out of their equity interests in Merrimac Paper Company ("MPC" or the "Debtor") are of a fundamentally different nature than those of the trade creditors who sold goods and services to MPC and its affiliated debtors, Holyoke Card Company, Inc. and Aquamac Corporation (collectively, the "Debtors"), and ordered subordination of those claims under section 510(b) and (c) of title 11 of the United States Code (the "Bankruptcy Code").  Further, having found that the claims of Messrs. Harrison and Eggert are subject to subordination, the Bankruptcy Court found that their attachments securing repayment of these claims should be avoided for the benefit of the estate under section 510(c)(2) of the Bankruptcy Code.  The Bankruptcy Court also found that, to the extent that Appellants asserted any claims arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1101 et seq. ("ERISA"), these claims must be subordinated under both sections 510(b) and (c) of the Bankruptcy Code.

---

[1]      There are two related appeals pending before this Court docketed under Civil Case Nos. 03-40282 and 03-40288.  The underlying facts and issues raised in both appeals are identical.  Consequently, Appellee is filing identical reply briefs under each docket number.

[2]      Hereinafter, references to Appellee's Appendix shall be designated as "AA" followed by the relevant page number(s) in such Appendix.

GSDOCS-1316172-5

Lastly, the Bankruptcy Court held that Eggert's attachment, which was obtained less than ninety days before the filing of the bankruptcy petition, is subject to avoidance under sections 547(b) and 550 of the Bankruptcy Code.

## II.    STATEMENT OF THE FACTS[3]

### The ESOP and Its Obligation to Repurchase Stock Interests

1.    Since 1985, MPC has maintained an employee stock ownership plan ("ESOP") for the benefit of present and former employees. See AA at 4. The ESOP provides that, upon separation from service, participants are entitled to a distribution of MPC stock allocable to them based upon their participation in the ESOP. Id.

2.    Within fifteen months of the date of a stock distribution, ESOP participants have the right to sell, or "put," the MPC shares distributed to them back to the ESOP or MPC. Id. The repurchase price for the shares is determined by a "fair market" valuation of the company. Id.

### Harrison's Claims Arising Out of His Equity Interests in MPC

3.    Harrison was a long-time employee of MPC, who separated from service in 1999, having held the position of Human Resources Manager. Id. At the time of his separation from the company, Harrison owned approximately six percent (6%) of the outstanding common stock of MPC. See AA at 4, 24.

4.    Upon Harrison's separation from service, the ESOP conducted an evaluation of Harrison's interest in MPC, which value was determined to be $1,116,200 as of December 31, 1999. Id.

---

[3]    With respect to the citations to the Memorandum of Decision, Appellee notes that, in their brief, Appellants concede that the facts are undisputed and have accepted the Bankruptcy Court's factual findings.

5.      On or about January 1, 2000, Harrison was paid the sum of $200,000 against the stock redemption price of $1,116,200.  Id.

6.      The balance of the amount owing for redemption of Harrison's stock was payable under a note dated July 19, 2001 in the original principal amount of $916,300, which provided for the payment of interest at the rate of eight and one-half percent (8½%) per annum, payable in three annual installments (the "Harrison Note").   Id. Harrison accepted delivery of the Harrison Note in satisfaction of the redemption obligation.  Id.

7.      On January 4, 2001, MPC paid Harrison the sum of $343,203 as the first installment payment due under the Harrison Note.  Id.

8.      On September 6, 2002, Harrison commenced a civil action in the Commonwealth of Massachusetts, Essex Superior Court, against MPC for nonpayment of the balance owing under the Harrison Note.  On September 12, 2002, the Essex Superior Court granted an attachment in favor of Harrison and against MPC in the amount of $610,000 (the "Harrison Attachment").  See AA at 4.  That attachment encumbered, inter alia, MPC's real property located at 39 South Canal Street in Lawrence, Massachusetts (the "39 South Canal Street Property").

9.      Harrison filed a proof of claim in the chapter 11 cases.  See AA at 6-7. Harrison's proof of claim asserted that the basis for his claim is "ERISA benefits."  See AA at 7.  Harrison attached to his proof of claim a copy of the Harrison Note and the complaint filed in the Essex Superior Court.  Id.  That complaint contains only one count for breach of contract for MPC's failure to pay the Harrison Note.  Id.

-3-

**Eggert's Claims Arising Out of His Equity Interests in MPC**

10.     Eggert was similarly a long-term employee of MPC, who separated from service in the year 2000, having held the position of Technical Director and Executive Vice President of the company. See AA at 5. At the time of his separation from service, Eggert owned approximately 9% of the outstanding common stock of MPC. See AA at 5, 24-25.

11.     As was the case with Mr. Harrison, upon Mr. Eggert's separation from service, the ESOP conducted a valuation of Eggert's interest in MPC, which value was determined to be $1,555,500 as of December 31, 1999. See AA at 5, 25.

12.     The obligation to redeem Eggert's equity interest was set forth in a note dated December 29, 2000 in the original principal amount of $1,555,500, which note bore interest at the rate of eight and one-half percent (8½%) per annum, payable in three annual installments (the "Eggert Note" and together with the Harrison Note, the "Notes"). Id. Eggert accepted delivery of the Eggert Note in satisfaction of his equity interest. Id.

13.     On January 8, 2003, Eggert commenced a civil action in the United States District Court for the District of Massachusetts against MPC, among others, demanding payment of monies due under the Eggert Note. On or about January 29, 2003, the District Court issued an attachment in favor of Eggert and against MPC in the amount of $1,829,935 (the "Eggert Attachment"). See AA at 5. The Eggert Attachment also encumbered the 39 South Canal Street Property.

14.     Eggert filed a proof of claim in the Debtors' chapter 11 cases to which he attached a copy of the complaint filed in the United States District Court. See AA at 7.

GSDOCS-1316172-5

**The Bankruptcy Filings and the Treatment of Claims Under the Confirmed Chapter 11 Plan**

15.    Less than ninety days after the Eggert Attachment, on March 17, 2003, the Debtors filed their petitions under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases. See AA at 3-4.

16.    On June 20, 2003, the Debtor commenced the instant adversary proceeding against Harrison and Eggert. On October 15, 2003, the Debtor filed a motion for partial summary judgment and, on October 30, 2003, Harrison and Eggert filed their opposition thereto.    On November 7, 2003, the Bankruptcy Court entered its Memorandum of Decision granting partial summary judgment in the Debtor's favor on counts I, III, IV and VI of the amended complaint.    On November 12, 2003, the Bankruptcy Court entered the Judgment.

17.    On November 7, 2003, the Bankruptcy Court, simultaneously with its issuance of the Bankruptcy Court Decision, entered its order (the "Confirmation Order") confirming the Debtors' Second Amended Joint Plan of Reorganization (the "Plan"), bringing a successful conclusion to the chapter 11 cases. See Confirmation Order, AA at 75-100.

18.    At the confirmation hearing held on November 5 and November 7, 2003, the Plan enjoyed the support of the Debtors' major creditor constituencies: the Official Committee of Unsecured Creditors and the Debtors' secured lender, Summitbridge Global Investments LLC.  See Transcript of November 5, 2003 confirmation hearing ("Transcript") at p. 110 l. 25, p. 111 ll. 1-9. The only parties opposing confirmation were Messrs. Harrison and Eggert and three other similarly situated holders of notes given to redeem equity interests. See Transcript at p. 100 ll. 24-25, p. 101 ll. 1-7.

-5-

19.    The Plan recognizes the inherent distinction between the claims asserted by Messrs. Harrison and Eggert on their Notes arising out of their equity interests in MPC and those of general unsecured creditors who sold goods and services to the Debtors. Under the Plan, general unsecured creditors are placed in Class 6, while the claims of Messrs. Harrison and Eggert and other stock repurchase claims are placed in Class 7. See Plan § IV.F-G, AA at 49-51.

20.    The Debtors estimate that the total allowed general unsecured claims against the Debtors will be approximately $4.5 million. See Plan, Summary, AA at 32. Under the Plan, the holders of such claims are to receive a cash distribution equal to approximately 12% of their claims. Id. The source of this distribution will be a $425,000 cash payment which was made on November 18, 2003, the Effective Date of the Plan, to a Trust established for the benefit of Class 6 Claimants (the "Creditors' Trust"), and an additional $125,000 to be paid to the Creditors' Trust within one year of the Effective Date of the Plan from the proceeds of the 39 South Canal Street Property. See Plan, Summary and § IV.F, AA at 31, 49-50.

21.    Should this United States District Court not uphold the Bankruptcy Court Decision, the limited dividend to Class 6 claimants would be further diluted by the claims of Harrison and Eggert. Furthermore, the Reorganized Debtors would be obligated to fund out of operating capital the $125,000 payment to the Class 6 Trust on account of the 39 South Canal Street Property.

## III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158, the district court should conduct a de novo review of the bankruptcy court's rulings of law and accept the bankruptcy court's findings of fact

-6-

GSDOCS-1316172-5

unless they are clearly erroneous.  <u>Casco Northern Bank v. DN Assoc.</u>, 3 F.3d 512, 515 (1st Cir. 1993); <u>Monarch Life Ins. Co. v. Ropes & Gray</u>, 173 B.R. 31, 35 (D. Mass. 1994).  Appellee agrees with Appellants' assertion that the Bankruptcy Court's factual findings are not in dispute for purposes of this appeal.

**IV.    ARGUMENT**

> **A.    The Bankruptcy Court Properly Subordinated Appellants' Claims Under 11 U.S.C. §510(c)**
>
> > **1.    Introduction**

Following long established precedent within the First Circuit that dates back to the 1920 decision of <u>Matthews Bros. v. Pullen</u>, <u>infra</u>, and its recent progeny, the Bankruptcy Court properly determined that the Appellants' stock redemption claims arising from the Notes and ERISA-related claims, if any, are subject to subordination under section 510(c) of the Bankruptcy Code.  This line of precedent does not require a showing of inequitable conduct on the part of the claimant.  Rather, these cases establish that, by the very nature of their claims, stock redemption claimants should not stand <u>pari passu</u> with general creditors.  Confronted with the overwhelming weight of authority, Appellants rely primarily – and erroneously – on a United States Supreme Court ("Supreme Court") case that, in fact, supports equitable subordination in this case and that concerned a category of claims – tax claims – which, unlike stock redemption claims, are expressly afforded <u>higher</u> priority under the Bankruptcy Code.  Long-established authority within the First Circuit compels the conclusion that the Bankruptcy Court's rulings were sound in all respects and should be affirmed.

-7-

2.    **The Uniform Authority in this Circuit Mandates Equitable Subordination of Appellants' Claims under 11 U.S.C. §510(c)**

Section 510(c) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may —
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest ...

11 U.S.C. § 510(c). In enacting section 510(c), Congress intended to codify existing case law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6315. As Congress noted: "[i]t is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle." Id. at 6452. In this Circuit, it has long been recognized that stock redemption claims may be subordinated without a showing of any misconduct on the part of the claimant. Matthews Bros. v. Pullen, 268 F. 827 (1st Cir. 1920); Keith v. Kilmer, 261 F. 733 (1st Cir. 1919).

In Matthews, the United States Court of Appeals for the First Circuit (the "First Circuit") reviewed claims that were substantially similar to those asserted by Appellants. Former shareholders of a corporation had sold their shares to the corporation for cash and a note. Id. at 828. The Mathews court found that the corporation was solvent at the time of the exchange and the transaction was in good faith. Id. There were no allegations of inequitable conduct by either party. Id. The corporation later became insolvent and the former shareholders – now noteholders – sought to have their claims allowed and to share pari passu with other creditors in the distribution of the corporation's assets. Id.

-8-

The First Circuit held that a former shareholder's claim arising from a stock redemption note cannot elevate such claimants' status to that of a general unsecured creditor: "a stockholder cannot, through an executory contract cease to be a stockholder and become a creditor, to share in competition with other creditors in the assets of the corporation when bankrupt." Matthews, 268 F. at 827, citing, Keith, 261 F. at 733. The Keith and Mathews holdings stand today as precedent binding on all First Circuit courts.

Indeed, over the last ten years, a series of well-reasoned United States District and Bankruptcy Court cases in this jurisdiction have firmly cemented the "no fault" equitable subordination principle established by the First Circuit more than eighty years ago. See, e.g., Liebowitz v. Columbia Packing Co., 56 B.R. 222 (D.Mass. 1985); In re Main Street Brewing Co., Ltd., 210 B.R. 662 (Bankr. D. Mass. 1997); In re New Era Packaging, Inc., 186 B.R. 329 (Bankr. D. Mass. 1995); In re SPM Manufacturing Corporation, 163 B.R. 411 (Bankr. D.Mass. 1994).

As Judge Rosenthal noted in the Bankruptcy Court Decision, SPM is the leading "no fault" subordination case in this jurisdiction. 163 B.R 411. The claim subordinated in SPM arose from a promissory note obtained in exchange for redemption of the debtor's stock owned by the claimant. Id. at 413. No inequitable conduct on the part of the claimant was alleged or found. Id. The SPM court engaged in an detailed review of the Congressional record relating to the enactment of section 510(c), and reasoned "that Congress intended courts to have the power to equitably subordinate claims because of their nature and origin." Id. at 414.

Beyond its review of the Congressional record, the SPM court found ample support in several decisions under the former Bankruptcy Act and the current Bankruptcy

GSDOCS-1316172-5

Code that have taken the same view on "no fault" subordination. Id. at 415. The underlying theme among the decisions reviewed was the policy consideration that stock redemption claims must rank behind general unsecured creditors because of the priority such creditors enjoy over stockholders. Id., citing, Robinson v. Wagenman, 75 F.2d 756, 757-58 (5th Cir. 1935)("the assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full"); Liebowitz, 56 B.R. at 224 (in a stock redemption in exchange for a note, the underlying nature of the transaction survives, and the note remains an equity obligation).

Further, the SPM court found that the subordination of stock redemption debt raises policy considerations similar to those requiring the subordination of damage claims arising from the sale or purchase of a debtor's stock under section 510(b). SPM, 163 B.R. at 416. Indeed, it found that the grounds for subordination of stock redemption claims are even more compelling than for subordination of damage claims arising from the purchase of equity securities:

> A stock purchase claimant is attempting to recover only the cost of his investment, whereas a stock redemption claimant is usually seeking profit in the sale of the stock. A redemption claimant, moreover, is trying to recover what is essentially a liquidating dividend on his stock. And because of the absence of consideration, prior payments on the claim will have contributed to the debtor's financial collapse.

Id. The court concluded that stock redemption claims, even if represented by a promissory note, must be equitably subordinated under section 510(c). Id.

A year after SPM, the New Era court reiterated the applicability of "no fault" principles of equitable subordination to claims arising from the redemption of stock. 186 B.R. at 335-37. The claims subordinated in New Era also arose from a promissory note issued in connection with a stock redemption, with no allegations of misconduct by the

-10-

noteholder. Id. at 331.   The New Era court was persuaded by the SPM and Leibowitz

holdings and similarly concluded that claims arising from stock redemption notes must be

subordinated to those of general unsecured creditors, regardless of the claimants'

conduct.  Id. at 336.  In its closing statement, the New Era court elucidated the rationale

for "no fault" subordination:

> The Court admits that, in certain cases, some unfairness may result to the
> stockholder who redeems stock at a time of a company's substantial
> solvency and finds at the time for deferred payment that the company is
> insolvent through no fault of the stockholder.  But juxtaposed against that
> unfortunate result is the recognition that, at the outset of the redemption
> transaction, the company became obligated to the stockholder, but
> received nothing in return.  The burden of payment should not, therefore,
> fall on the shoulders of the company's creditors who parted with value for
> the company's benefit.

New Era, 186 B.R. at 336.

The next case in the line of precedent establishing "no fault" equitable

subordination in this jurisdiction is In re Main Street Brewing Co., Ltd., 210 B.R. 662

(Bankr. D. Mass. 1997).[4]   Main Street Brewing involved a breach of the debtor's

agreement to purchase a claimant's warrant rights. Id. at 663-64.  As in SPM and New

Era, there were no allegations of inequitable conduct.  Although the court found that

debtors were insolvent at the time the warrants were granted, it noted that insolvency was

not the basis for subordination.  Id. at 665-66.

The Main Street Brewing court likened the claim for breach of the agreement to

redeem the claimants' warrant rights to the claim of a former stockholder for payment of

the balance due under a stock redemption agreement.  Id. at 664.  The only difference

between the two, the court noted, is that, while a stock redemption agreement relates to

---

[4]      Main Street Brewing was decided after the U.S. Supreme Court's decision in United States v.
Noland, 517 U.S. 535 (1996), which is discussed in detail below.

-11-