and the exhibits thereto, as modified hereby, are incorporated by reference into, and are an integral part of, this Confirmation Order.

24.    Objections. All Objections to confirmation of the Plan that have not been withdrawn, waived or settled, and all reservations of rights included in such Objections, are overruled in their entirety on the merits (except as otherwise provided in this Order) and all withdrawn objections are deemed withdrawn with prejudice.

25.    Modifications to Plan. The Plan is hereby amended pursuant to 11 U.S.C. § 1127(a) as set forth in the Modifications, the record of the Confirmation Hearing, and in this Confirmation Order. The amendments are either technical or non-material or materially improve the treatment of Claim holders, and do not adversely change the treatment of the Claim of any creditor who has not consented to such amendment. The Debtors are not required to solicit acceptances or rejections to the Plan as amended and the amendments are hereby specifically approved. The Plan and such amendments together constitute the Plan.    The Debtors, the Reorganized Debtors and their respective affiliates, subsidiaries, directors, officers. agents and attorneys are hereby authorized, empowered and directed to issue, execute, deliver, file or record any document, and to take all other actions necessary or appropriate, in their sole discretion, to implement, effectuate and consummate the Plan in accordance with its terms, all without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors and further order of this Court, and on and after the Effective Date, any such document will be legal, valid and binding in accordance with its terms.

26.    Post-Confirmation Loan Facility.    Pursuant to 11 U.S.C. § 1142(b), without further action of the Bankruptcy Court, the Debtors or Reorganized Debtors and

11

0085

their representatives are hereby authorized to execute, deliver, file or record any and all

other documents or instruments that are necessary or advisable to execute and implement

the Term Note and the Revolver Note payable to Summit or its designee (the "Post-

Confirmation Loan Facility"), including, without limitation, any credit agreements,

security agreements, mortgages, pledges, instruments, financing statements and any other

agreements or documents as Summit or any successor thereto may reasonably require in

order to effectuate the Post-Confirmation Loan Facility (together with the Term Note and

the Revolver Note, collectively, the "Post-Confirmation Loan Facility Documents"),

without the need for further approval of any of the Reorganized Debtors' board of

directors.

       27.     Revesting of Debtors' Property. Except as otherwise provided in the Plan

or in this Confirmation Order, including the Liens granted to Summit pursuant to the

Post-Confirmation Loan Facility, all property of the Debtors, and any property acquired

by a Debtor or Reorganized Debtor under the Plan, will vest in the applicable

Reorganized Debtor free and clear of all Claims, Liens, charges and other encumbrances,

and all right, title, and interest of any holders of such Claims, Liens, charges and other

encumbrances, including any rights to any collateral thereunder, shall revert to the

applicable Reorganized Debtor, and its successors and assigns.

       28.     Substantive Consolidation. The Plan effectuates the substantive

consolidation of the Debtors, for distribution purposes only.   This Court finds that the

assets and liabilities of the Debtors are sufficiently intertwined that it would be

impossible or financially prohibitive to disentangle their affairs and, accordingly,

substantive consolidation for distribution purposes only is warranted pursuant to 11 U.S.C. §105(a).

    29.   Class 6 Trust.

    A.   Article VI of the Plan provides for the establishment of the Class 6 Trust, to which certain property of the Debtors will be assigned or otherwise transferred on or after the Effective Date.   Upon the Effective Date, the Reorganized Debtors shall transfer to the Class 6 Trust the sum of $425,000 and the HCC Avoidance Claims.  Upon the Effective Date or such later date as the Reorganized MPC and the Class 6 Trustee may agree in writing, the Reorganized MPC shall also convey the Canal Street Property to the Class 6 Trust, free and clear of Liens, claims, and encumbrances (except for the attachments held by Messrs. Harrison and Eggert to the extent such attachments have not been previously avoided pursuant to the Harrison/Eggert Litigation).

    B.   The Creditor Trustees shall have the following rights and responsibilities: (a) the co-exclusive right, with the Reorganized Debtors, to object to Class 6 Claims, including the right to assert Avoidance Actions in defense of any Class 6 Claim; (b) the exclusive right, pursuant to 11 U.S.C. §1123(b)(3)(B), to prosecute, compromise, and deal with in any way the HCC Avoidance Claims; and (c) the duty to distribute assets in his possession or control to Allowed Class 6 Claim holders, after reduction for the expenses of the Class 6 Trustee.

    30.   Vesting of Assets/Preservation of Causes of Action.

    A.   As more fully described in the Plan, all property of the Debtors that is not specifically disposed of pursuant to the Plan shall vest in the Reorganized Debtors on the Effective Date.  All assets of the Reorganized Debtors shall be free and clear of all Liens,

13

Claims, and Equity Interests, except as specifically provided in the Plan or this Confirmation Order, including the Liens granted to Summit pursuant to the Post-Confirmation Loan Facility. Except as otherwise provided in the Plan or this Confirmation Order, and as more fully described in the Plan, the Reorganized Debtors shall retain and may enforce, sue upon, settle or compromise all claims, rights, causes of action, suits or proceedings that the Debtors may hold against any party, including the Avoidance Actions.

    B.   Notwithstanding the foregoing, upon the Effective Date, all Avoidance Actions arising under 11 U.S.C. §547 shall be extinguished, except for those claims and rights arising in connection with the Harrison/Eggert Litigation and except to the extent necessary to defeat a Claim (or any Lien securing a Claim) asserted against the Debtors or their bankruptcy estates.

    31.   Rejected Executory Contracts And Unexpired Leases. Any prepetition executory contract or unexpired lease which: (i) has not expired by its own terms on or prior to the Confirmation Date; (ii) has not been assumed or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date; (iii) is not the subject of a Court approved stipulation or Court order extending the time to assume or reject such contract or lease; (iv) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, which motion may be withdrawn prior to entry of an order approving it; or (v) is not designated in the Plan or the Supplement as being an executory contract or unexpired lease to be assumed at the time of confirmation of the Plan, shall be deemed rejected as of the Confirmation Date in accordance with 11 U.S.C. § 365.

14

0088

32.    Rejection Damages Claims. If the rejection of an executory contract or unexpired lease results in a Claim for damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Class 6 Trust or their respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Court on or before thirty (30) days following entry of the Confirmation Order.

33.    Professional Fee Claims. All entities seeking Professional fees shall file a fee application within 45 days after the Confirmation Date for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.  Any award granted by this Court shall be paid by the Reorganized Debtors upon the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as the case may be.   Professional fees and expenses for services rendered after the Confirmation Date in connection with the bankruptcy cases and the Plan shall be paid by the Debtors or the Reorganized Debtors, as the case may be, upon the receipt of reasonably detailed invoices therefor in such amounts and on such terms agreed to by the parties, without the need for further Court authorization or entry of a Final Order.   The Court will retain jurisdiction to adjudicate any dispute arising out of the payment of such Professional fees and expenses rendered after the Confirmation Date and in connection with the bankruptcy cases and the Plan.

15

34.    <u>Continuation of Retiree Benefits</u>. The Debtors and Reorganized Debtors shall pay all retiree benefits to the extent, if any, required by Section 1129(a)(13) of the Bankruptcy Code for the duration of the period the Debtors are contractually or legally obligated to provide such benefits, subject to any and all rights of the Debtors or the Reorganized Debtors under applicable law.

35.    <u>Securities Law Exemption</u>. The New Common Stock issued under the Plan is exempt from the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring registration for the offer or sale of a security pursuant to, without limitation, Section 1145 of the Bankruptcy Code.

36.    <u>Exemption from Transfer Taxes</u>. In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, the issuance, renewal, modification or securing of indebtedness by such means, including, without limitation, the recording or filing of any of documentation, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document

16

recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

37.    Discharge of the Debtors and Injunction.   All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims against the Debtors of any nature whatsoever, against any of the Assets, or against the Class 6 Trust.  Except as otherwise expressly provided in the Plan, entry of this Confirmation Order acts as a discharge of all Claims against and Liens upon the Debtors, the Assets, and the Class 6 Trust, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim therefor was filed, whether the Claim is Allowed, or whether the holder thereof voted to accept the Plan or is entitled to receive a distribution thereunder, subject to the occurrence of the Effective Date.  Upon entry of the Confirmation Order, and subject to the occurrence of the Effective Date, any holder of such discharged Claim or Equity Interest shall be precluded from asserting against the Debtors, the Reorganized Debtors, any of their successors or any of their respective Assets or properties, or the Class 6 Trust, any other or further Claim or Equity Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the date of entry of the Confirmation Order.

17

The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the occurrence of the Effective Date.

58. In accordance with Section 524 of the Bankruptcy Code, the discharge provided by this Section and Section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset or recover the Claims discharged hereby. Except as otherwise expressly provided in the Plan or this Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors will be permanently enjoined and precluded permanently, on and after the Effective Date, subject to the occurrence of the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtors, or the Reorganized Debtors or the Class 6 Trust, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Class 6 Trust, or any of their respective successors on account of any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Reorganized Debtors, the Class 6 Trust, or against their respective Assets on account of any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors, the Reorganized Debtors or against their respective Assets on account of any such Claim. The foregoing injunction will extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property, as well as the Class 6 Trust.

18

39.    Releases. The Reorganized Debtors and the Class 6 Trustee shall release those directors and officers in service as of the Confirmation Date from any and all claims and liabilities arising during the course of their service as director or officer, including those which may arise for breach of a fiduciary duty but specifically excluding those claims or liabilities which may arise in connection with the Plan or ancillary documents thereto.

40.    Upon the Effective Date, the Reorganized Debtors, the Class 6 Trustee [in his/her capacity as bankruptcy estate representative authorized to pursue the HCC Avoidance Claims], and Summit, each for themselves, their agents, employees, affiliates, predecessors (including Fleet in the case of Summit), successors and assigns shall be deemed to have fully released, remised, and forever discharged one another from any and all claims, acts, debts, demands, actions, causes of action, suits, dues, sum and sums of money, accounts, reckonings, bonds, covenants, contracts, controversies, agreements, promises, representations, restitutions, doings, omissions, variances, damages and liabilities whatsoever of any name and nature, both in law and in equity, which the parties had or ever shall have from the beginning of the world to the Effective Date arising from, related to, or connected with the HCC Avoidance Claims. Notwithstanding the foregoing, nothing contained herein shall be deemed to have released, modified, or discharged any obligations that the Reorganized Debtors, Summit, or the Class 6 Trustee have under the Plan.

41.    Limited Indemnity. To the extent that the Class 6 Trustee obtains any recovery from the HCC Avoidance Claims, he or she shall hold Summit harmless from

19

and against any indemnification or contribution claims brought against Summit for recovery of judgments against, or settlements paid by, any defendants to the HCC Avoidance Claims (but shall have no obligation to pay Summit's attorneys' fees in defense of such claims). In the event any such claims for indemnification or contribution is made or threatened against Summit, Summit shall: (x) promptly notify the Class 6 Trustee, and (y) use best efforts to defend such claims. The Class 6 Trustee shall not be liable for any settlement of any such claim by Summit without the Class 6 Trustee's consent which shall not be unreasonably withheld. Nothing in the foregoing shall confer the right upon any party to seek contribution or indemnity contrary to the provisions of M.G.L.A. 231B § 1 et. seq. or other applicable laws. Also, nothing contained in this section or otherwise in the Plan shall be deemed an admission by Summit of any liability including, without limitation, in connection with the HCC Avoidance Claims.

42.    Claims. Temporary allowance of a Claim under the Plan for voting purposes shall not constitute an allowance or disallowance of the Claim for any other purpose under the Plan, including, but not limited to distributions under the Plan. The Debtors, the Reorganized Debtors, and the Class 6 Trustee reserve the right to object to temporarily allowed Claims on any and all bases. Final allowance of a Claim pursuant to the provisions of the Plan or an order of this Court shall not prejudice the rights of the Debtors, the Reorganized Debtors, the Class 6 Trust and its counsel to investigate or prosecute Avoidance Actions, including objections to Claims pursuant to Bankruptcy Code Section 502(d), or to otherwise seek reconsideration of a Claim under Bankruptcy Code Section 502(j).

20

43.   <u>Implementation And Consummation Of Plan Documents</u>. In accordance with 11 U.S.C. § 1142, the implementation and consummation of the Plan in accordance with its terms shall be and hereby is authorized and approved and the Debtors, Reorganized Debtors, Class 6 Trustee, or any other Person referenced in the Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any documents, whether or not any such document is specifically referred to in the Plan, the Disclosure Statement or any exhibit thereto or this Confirmation Order, including, without limitation, the Post-Confirmation Loan Facility Documents and to take any action necessary or appropriate to consummate the Plan in accordance with its terms.

44.   <u>Release of Liens</u>. Except as may otherwise be provided in the Plan or elsewhere in this Confirmation Order, including the Liens granted to Summit pursuant to the Post-Confirmation Loan Facility, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtors, together with any and all Liens (including Liens on any and all Collateral) securing the same, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtors thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by the Reorganized Debtors, any holder of a Claim shall promptly provide the Reorganized Debtors with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim. In the event of entry of a Final

21

0095

Order in favor of Harrison in the Harrison/Eggert Litigation respecting subordination or
avoidance of Harrison's Claim and upon final allowance of said Claim as a Secured Claim
after notice and opportunity to object, Harrison shall have over the said Class 6 Claim (to
the extent of the value of the Canal Street Property) secured by a Lien upon the Canal
Street Property or the net proceeds thereof if the Canal Street Property has been
previously sold by the Reorganized MPC or the Class 6 Trustee, and the Reorganized
Debtors shall in such event abandon any interest in the Canal Street Property.  In the event
a Final Order is entered against Harrison in the Harrison/Eggert Litigation respecting
subordination or avoidance of Harrison's Claim, Harrison shall have no Lien upon the
Canal Street Property and shall take all actions necessary to discharge and release said
Lien.  The procedures set forth in the Plan shall govern the sale of the Canal Street
Property, including but not limited to the right of Harrison to receive advance notice of
said sale and to object thereto.

45.    Provisions of Order Nonseverable and Mutually Dependent. The
provisions of this Confirmation Order are nonseverable and mutually dependent.

46.    Retention Of Jurisdiction. This Court shall retain exclusive jurisdiction
over the bankruptcy cases as set forth in Article XII of the Plan.

47.    Binding Effect of Prior Orders. Pursuant to 11 U.S.C. § 1141, all prior
orders entered in these bankruptcy cases and all documents and agreements executed by
the Debtors during the pendency of these bankruptcy cases that were authorized by the
Bankruptcy Court or permitted under the Bankruptcy Code, and all motions or requests
for relief pending before the Bankruptcy Court as of the Effective Date shall be, and

22

0096

hereby are, binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their respective successors and assigns.

48.    Binding Effect of Plan.  In accordance with 11 U.S.C. § 1141(a), the Plan (including the exhibits and schedules to, and all documents and agreements created pursuant to, the Plan) and all of its provisions shall be, and hereby are, binding upon the Debtors, the Reorganized Debtors, the Class 6 Trustee, any Person acquiring or receiving property or a distribution under the Plan, any lessor or lessee of property to or from the Debtors, any party to a contract with the Debtors, any person who granted or is a beneficiary of the exculpations and releases contained in or provided for under the Plan, any creditor or equity security holder of the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such creditor or equity security holder is impaired under the Plan and whether or not such creditor, equity security holder or entity has accepted the Plan, any and all nondebtor parties to executory contracts and unexpired leases with any of the Debtors, any and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described herein or in the Plan, any other party in interest, and the respective heirs, executors, administrators, successors or assigns, if any, of all of the foregoing.

49.    Filing and Recording.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims, Equity Interests, and Liens existing prior to such date have been unconditionally released, discharged and terminated, and (b) is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

23

governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record documents or instruments. Each and every federal, state and local governmental agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including, without limitation, Uniform Commercial Code financing statements and mortgages) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order.

50.    Effect of Reference to the Plan in this Confirmation Order. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.

51.    Headings. Headings utilized in this Confirmation Order are for convenience of reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

52.    Notice of Entry of Confirmation Order. On or before the fifteenth Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing such notice of entry to be delivered to such parties by first-class mail, postage prepaid. No other or further notice shall be necessary.

24

53.    <u>Notice of Effective Date</u>. Within seven Business Days following the
occurrence of the Effective Date, the Debtors shall file notice of the occurrence of the
Effective Date and shall serve a copy of such notice upon the United States Trustee, and other parties in interest, by causing such notice to be
delivered to such parties by first-class mail, postage prepaid. No other or further notice of
the Effective Date shall be necessary.

54.    <u>Nonoccurrence of Effective Date</u>. In the event that the Effective Date does
not occur, then (i) the Plan, (ii) assumption or rejection of executory contracts or
unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant
to the Plan, (iv) any actions, releases, waivers, or injunctions authorized by this
Confirmation Order or any order in aid of the consummation of the Plan, and (v) this
Confirmation Order shall be deemed null and void *ab initio*. In such event, nothing
contained in this Confirmation Order, any order in aid of consummation of the Plan, or
the Plan, and no acts taken in preparation for consummation of the Plan, (a) shall be
deemed to constitute a waiver or release of any Claims or Equity Interests by or against
the Debtors or any other persons or entities, to prejudice in any manner the rights of the
Debtors or any Person in any further proceedings involving the Debtors or otherwise, or
to constitute an admission of any sort by the Debtors or any other Persons as to any issue,
or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

55.    <u>Consummation Of Plan</u>. FRBP 3020(e) shall not apply to this
Confirmation Order and the Court authorizes the Debtors to consummate the Plan
immediately after entry of this Confirmation Order.

25

56.    **Plan Supplement.**  The Plan Supplement filed on October 27, 2003 is hereby approved in all respects and incorporated into the Plan and this Order. In addition to those executory contracts and unexpired leases to be assumed as identified on Exhibit D to the Plan Supplement, the following additional executory contracts and unexpired leases shall be deemed assumed as of the Effective Date:

(a)    the Ground Lease dated June 1, 1990 by and between Aquamac and MPC;

(b)    the Lease dated October 13, 1990 by and between Aquamac and MPC; and

(c)    the Operating Agreement dated October 13, 1990 by and between Aquamac and MPC.

The assumption in Schedule D of "mill rights and surplus water agreements" shall include the 1845 agreement with Essex Company granting in perpetuity ten (10) millpowers of water.   Also, to the extent deemed to be executory contracts, the Debtors assume any governmental licenses in place, including the license with the Federal Energy Regulatory Commission (FERC).

Dated: November 7, 2003

Hon. Joel B. Rosenthal
United States Bankruptcy Judge

389637

26