In the

FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT

2004 JAN 27   A 10: 21

For the District of Massachusetts

U.S. DISTRICT COURT
DISTRICT OF MASS.

Nos. 03-40282, 03-40288

MERRIMAC PAPER COMPANY, INC.,
Plaintiffs-Appellants,

v.

RALPH HARRISON and ALAN EGGERT,
Defendants-Appellants

Appeal from the United States Bankruptcy Court
for the District of Massachusetts

APPELLANTS' REPLY

Thomas P. Smith
Caffrey & Smith, P.C.
300 Essex Street
Lawrence, MA 01840
(978) 686-6151

Jeffrey B. Renton
Gilbert & Renton LLC
23 Main Street
Andover, MA 01810
(978) 475-7580

Robert Shea
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617) 723-7700

Date:   January 27, 2004                Attorneys for Defendants-Appellants

## INTRODUCTION

Defendants-Appellants Ralph Harrison ("Harrison") and Alan Eggert ("Eggert") respectfully submit this reply to address two points raised in the brief of Appellee Merrimac Paper Co., Inc. ("MPC")

First, MPC, relying on two decisions that pre-date the Code, argues for a unique First Circuit interpretation of 11 U.S.C. § 510(c) that would categorically subordinate every note given by a debtor for the repurchase of its stock. As discussed in Point I, below, this argument must be rejected because: (1) the weight of precedent confirms §510(c) does not categorically subordinate claims without a finding of inequitable conduct; (2) many characteristics distinguish Harrison's and Eggert's claims from those subordinated in the cases cited by MPC; and (3) treatment of Harrison's and Eggert's claims as equity claims is completely at odds with the Bankruptcy Court's own finding that:

> In the instant case, the Former Employees [Harrison and Eggert] are no longer shareholders. **They have relinquished their stock certificates; they possess no indicia of ownership, and importantly if the stock of the Debtor was to increase in value, they cannot participate in the appreciation.** They are noteholders whose claims arising from the default under their notes are not subject to the mandatory subordination of section 510(b).

A. 176 (emphasis supplied)

Second, MPC argues that the nature of Appellants' ERISA claims is of no import. As set forth in Point II below, this Court must weigh ERISA in refusing to subordinate Harrison's and Eggert's claims.

I.  **11 U.S.C. § 510(C) DOES NOT PERMIT THE EQUITABLE SUBORDINATION OF HARRISON'S AND EGGERT'S CLAIMS WITHOUT A SHOWING OF INEQUITABLE CONDUCT**

The great weight of authority, from the Supreme Court down, does not permit the categorical subordination of claims under 11 U.S. C. § 510(c). See, e.g., United States v. Noland, 517 U.S. 535, 116 S.Ct. 1524, 1525 (1996)( "the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities."); In re Mobile Steel, 563 F.2d 693, 700 (5th Cir. 1977)(§510(c) subordination requires (i) a showing that the creditor had engaged in some type of inequitable conduct, (ii) that the misconduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant" and (iii) that the subordination "not be inconsistent with the provisions of the Bankruptcy Act.") ; Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 120 S.Ct. 1951 (2000); In re Lifschultz Fast Freight 132 F.3d 339, 348-49 (7th Cir. 1997)(vacating bankruptcy court's equitable subordination of a loan, the Seventh Circuit noted "the power of equitable subordination must not have the inevitable result of equitably subordinating" every claim within a particular class; "We conclude that inequitable conduct is still the general rule for equitable subordination . . .. Extraordinary circumstances might provide an exception. . . but we believe that almost any such exception would arguably also involve other misconduct of some sort."); In re Stoecker, 179 F.3d 54, 551 (7th Cir. 1999)("the power of equitable subordination . . . must be exercised case by case and not over a whole class of claims.") aff'd sub nom. Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 120 S.Ct. 1951 (2000); Moyer v. Official Creditors Committee of Paint and Assembly Corp., 2001 WL 290384 (S.D. Ill. 2001)(vacating a bankruptcy court decision subordinating stock redemption payments; "The Bankruptcy Court

elevated what was intended to be a case-by-case exception to the rule requiring inequitable conduct for equitable subordination to a categorical rule that all claims stemming from a stock redemption must be placed at the end of the line during a bankruptcy distribution. In so doing, the court neglected to consider other factors that may be relevant to or make other factual findings that may require that all or part of Appellant's claims be paid before those of the general unsecured creditors."); In re Stern-Seligman-Prins Co., 86 B.R. 994 (Bankr. W.D. Mo. 1988)(refusing to equitably subordinate stock repurchase agreement); In re Montgomery Ward Holding Corp., 272 B.R. 836, 845-46 (Bankr. D. Del. 2001)(Debtor's claim for subordination "is bereft of any allegation other than that the claim is based on a note it issued as payment to redeem stock. This alone does not form the basis or relief under § 510(c)").

If MPC's argument is excepted, every note given for redemption of stock would be automatically and categorically subordinated. This interpretation would convert 510(c)'s equitable, discretionary power into a mandatory rule. As the great weight of precedent indicates, this would be perversion of 510(c)'s purpose and must be rejected by this Court.

As set forth in Appellants' opening brief at Point III.2, the cases relied upon by MPC involved claims by controlling shareholders and thus can be readily distinguished from the claims of Harrison and Eggert. Unlike the stockholders in those actions, Harrison and Eggert were not controlling shareholders at MPC, they dealt with MPC at arms-length, and MPC received consideration for its repurchase of their ESOP stock over time. Likewise, the transactions subordinated in Kieth v. Kilmer, 261 F. 733 (1st Cir. 1919) and Matthews Bros. v. Pullen, 268 F. 827 (1st Cir. 1920) were perpetrated by controlling shareholders in a *de facto* fraud on general creditors of the corporation. In those cases, the First Circuit reasonably held that

controlling shareholders cannot by means of a controlled transaction turn themselves into creditors. In contrast, here, the Bankruptcy Court has held that Harrison and Eggert were no longer equity holders. The Bankruptcy Court specifically held that ". . . the Former Employees [Harrison and Eggert] are no longer shareholders. They have relinquished their stock certificates; they possess no indicia of ownership, and importantly if the stock of the Debtor was to increase in value, they cannot participate in the appreciation." A. 176.

For these reasons, the claims of Harrison and Eggert are not subject to equitable subordination under 510(c).

## II. APPELLANTS' ERISA RIGHTS MUST BE WEIGHED IN DETERMINING THE PROPRIETY OF SUBORDINATION.

MPC further argues that – insofar as Appellant's have been stripped of their ERISA-protected vested pension benefits – those statutory rights must take a back seat to Bankruptcy Code "section 510(c) and its codification of the principle of 'no fault' equitable subordination of stock redemption claims." Opp. Br. at 18, *citing* 29 U.S.C. § 1144(d) (ERISA should not be "construed to alter, amend, modify, invalidate or supersede any law of the United States").

As already briefed, however, MPC misreads Section 510(c) as categorically authorizing "no fault" equitable subordination without restriction. In fact, the law if far less permissive. See United States v. Nolan, 517 U.S. 535, 539-40 (1996) ("many Courts of Appeals have continued to require inequitable conduct before allowing the equitable subordination of most claims, see [citations], although several have done away with the requirement when the claim in question

was a tax penalty.").[1]  See also, e.g., Chemical Bank v. First Trust of N.Y., N.A., 156 F.3d 1114, 1122 (11th Cir. 1998) ("The language of section 510(c) expressly invokes the bankruptcy courts' historical exercise of their equitable powers to subordinate the claims of creditors who engaged in inequitable conduct in favor of the claims of those creditors who came to court with clean hands."); Summit Coffee Co. v. Herby's Foods, 2 F.3d 128, 131 (5th Cir. 1993) ("The equitable powers of a bankruptcy court, including the power to subordinate, may be 'invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'"), *quoting* Pepper v. Litton, 308 U.S. 295, 305 (1939); White Current Corp. v. Rural Util. Serv., 240 B.R. 476, 482 (Bankr. D. Vt. 1999) ("Equitable subordination is an unusual remedy which should be applied only in limited circumstances."), *quoting* Fabricators, Inc. v. Technical Fabricators, Inc., 926 F.2d 1458, 1464 (5th Cir. 1991).

MPC also attempts to turn ERISA § 1144(d) on its head, by seeking to transform the provision from a simple instruction ***not*** to construe ERISA as preemptive of other federal laws, into a far different (and broader) mandate that ERISA ***must*** be disregarded whenever another federal law, such as the Bankruptcy Code, is also involved. For several reasons, this goes too far.

First, Section 1144(d) plainly does ***not*** require total disregard of ERISA's purposes and protections whenever a bankruptcy petition is filed. To the contrary, the Bankruptcy Code is an

---

[1] The limited exception allowing "no fault" subordination of tax penalties is firmly grounded in the plain terms of the Bankruptcy Code. Id., 517 U.S. at 540 ("Section 510(c) may of course be applied to subordinate a tax penalty, since the Code's requirement that a Chapter 7 trustee must distribute assets 'in the order specified in . . . section 507' . . . is subject to the qualification, 'except as provided in section 510 of this title . . . .' 11 U.S.C. § 726(a)."). While it is true that "Congress meant to give courts some leeway to develop the [equitable subordination] doctrine," it certainly did not suggest the expansive reading given by MPC.

equitable statute, and so should be construed in a manner that "harmonizes" its terms with those of ERISA to the extent possible. See, e.g., In re Kincaid, 917 F.2d 1162, 1168 (9th Cir. 1990) ("We are confirmed in this position [that the Plan is a spendthrift trust] by the knowledge that it attenuates the clash between ERISA and bankruptcy law, and thus helps prevent our legal system from becoming a mere farrago of unrelated provisions."). Certainly, nothing in the Section 510(c) suggests that Congress intended to "eviscerate . . . so much of the protection granted benefit plans under ERISA":

> "ERISA aims to ensure that 'if a worker has been promised a defined pension benefit upon retirement – and if he has fulfilled whatever conditions are required to obtain a vested benefit – he actually will receive it.' Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 . . . (1980) . . . ERISA provisions therefore seek to prevent alienation of benefits, either voluntarily or involuntarily . . . . [¶¶] . . . It is unthinkable that Congress intended to eviscerate in this manner so much of the protection granted benefit plans under ERISA ."

Id., 917 F.2d at 1169-70 (Fletcher, J., concurring).

Second, the ERISA statutory rights that Appellants seek to enforce are far more specific than the general Bankruptcy Code provision relied upon by MPC. Compare 29 U.S.C. § 1132(a)(1) (ERISA provision authorizing claims to collect vested plan benefits that have been unlawfully denied), § 1132(a)(3) (ERISA provision authorizing claims for breaches of fiduciary duty), § 1109 (ERISA provision establishing duciary duties), with 11 U.S.C. § 510(c)(1) (the court may, if appropriate, equitably "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim").[2] "[U]nder settled rules of statutory

---

[2] In enacting Section 510(c), Congress generally "intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this [equitable] principle." United States v. Nolan, 517 U.S. 535, 539 (1996), quoting 124 Cong. Rec. 32398 (1978) and id. at 33998.

construction a more specific statute . . . should take precedence over a more general one." Mouradian v. John Hancock Cos., 930 F.2d 972. 973 (1st Cir. 1991).

Third, a *per se* rule mandating the "equitable subordination" of all pension benefits claims would inflict needless harm upon the purposes and protections of ERISA. Here, both ERISA and the ESOP Plan itself expressly required that Appellants receive "adequate security" for their "puts." That MPC failed to do as it was required – combined with the undisputed facts that Appellants held a non-controlling interest in MPC, did nothing wrong, and provided substantial consideration for their promissory notes[3] – distinguishes this case from each of the authorities cited by Plaintiff where "no fault" equitable subordination was ordered.[4]

\* \* \*

By denying equitable subordination in this case, Appellants would be returned to a footing at least equal to that of the other general creditors. This would harmonize the Bankruptcy Code's general interest in equity with ERISA's specific interest in protecting vested pension benefits. If Appellants' claims are wholly subordinated, by contrast, the ERISA interest would be totally lost.

---

[3] In its Statement of Facts, MPC asserts that Appellants "accepted delivery" of their promissory notes. Opp. Br. at ¶¶ 6, 12. This is meaningless. In truth, Appellants were handed the promissory notes without any opportunity to further negotiate or receive anything else, and subsequently sued to enforce their rights under both the notes and ERISA – including the right to adequate security – prior to MPC's bankruptcy petition or expiration of the statute of limitations. In other words, Appellants fully preserved all their rights.

[4] All of the cases relied upon by MPC concern ordinary "stock redemptions." This case is different, because the protections afforded by ERISA – including the obligation of MPC (which it breached) to provide "adequate security" – are at stake. Even if ERISA was not implicated, moreover, equitable subordination still should not be automatic. See, e.g., In re Stern-Slegman-Prins Co., 86 Bankr. 994, 1000 (Bankr. W.D. Mo. 1988) (stock redemption debt not equitably subordinated, as there was no misconduct by claimant).

## CONCLUSION

For all of the foregoing reasons and those set forth in Appellants' opening brief, this Court should reverse the Bankruptcy Court's decision, hold that Harrison's and Eggert's claims are not subject to equitable or mandatory subordination, hold that Harrison's and Eggert's attachments may not be transferred to the Debtor, and order that Harrison and Eggert participate in the distribution of in accordance with their rights as secured and unsecured creditors of Debtor.

        RALPH HARRISON and
        ALAN R. EGGERT,

        By their attorneys,

        */s/ Thomas P. Smith*
        Thomas P. Smith (BBO #555513)
         Caffrey & Smith, P.C.
         300 Essex Street
         Lawrence, MA 01840
         (978) 686-6151

        */s/ Jeffrey B. Renton*
        Jeffrey B. Renton, (BBO #554032)
         Gilbert & Renton, LLC
         23 Main Street
         Andover, MA 01810
         (978) 475-7580

        */s/ Robert J. Shea*
        Robert J. Shea (BBO #546795)
         Rudolph Friedman, LLP
         92 State Street
         Boston, MA 02109
         (617) 723-7700

## CERTIFICATE OF SERVICE

I, Thomas P. Smith, hereby certify that I served the foregoing document on the following parties to this appeal or their counsel by first class mail, postage prepaid on January 26, 2004

James F. Wallack, Esq.
Goulston & Storrs
400 Atlantic Ave
Boston, MA 02110

Charles R. Dale, III, Esq.
Gadsby & Hannah LLP
225 Franklin Street
Boston, MA 02110

_____
Thomas P. Smith