United States District Court
District of Massachusetts

```
_____
                               )
MERRIMAC PAPER COMPANY, INC.,  )
                               )
     Debtor.                   )
                               )   Bankruptcy Appeal No.
                               )   03-40282-NMG
RAPLH HARRISON and ALAN EGGERT,)
                               )
     Appellants,               )
                               )
     v.                        )
                               )
MERRIMAC PAPER COMPANY, Inc.,  )
                               )
     Appellee.                 )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendants-Appellants, Ralph Harrison ("Harrison") and Alan Eggert ("Eggert") appeal a final judgment of the Bankruptcy Court which equitably subordinated their stock redemption claims in the an adversary proceeding brought by the debtor, plaintiff-appellee, Merrimac Paper Company, Inc. ("Merrimac" or "the Debtor"). This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

**I.  Background**

   A.  Factual Background

The facts of this case, which the parties agree are not in

-1-

dispute, are stated as set forth in the Memorandum of Decision of the Bankruptcy Court and the briefs of Appellee and Appellants.

Merrimac has maintained an Employee Stock Ownership Plan ("ESOP") since 1985. The plan provides that, upon separation from employment, participants are entitled to a distribution of Merrimac stock allocated based upon their participation in the ESOP. Within 15 months of the date of the stock distribution, the ESOP participants have the right to sell, or "put," the stock distributed to them back to the ESOP or Merrimac.

Harrison was employed by Merrimac from 1963 to 1999. At the time of his separation, he held the position of Human Resources Manager and owned, under the ESOP, approximately 6% of Merrimac's outstanding common stock. Upon his separation, the ESOP determined that Harrison's interest in Merrimac was valued at $1,116,200. On January 1, 2000, Merrimac paid Harrison $200,000 against the value of his stock redemption. For the balance, Harrison received a promissory note dated July 19, 2000, in the principal amount of $916,300, which provided for 8.5% interest and was payable in three equal annual installments ("the Harrison Note"). On January 4, 2001, Merrimac paid Harrison $343,203 as the first installment payment under the note but it made no subsequent payments thereunder. Harrison obtained a real estate attachment against Merrimac in Essex Superior Court in the amount of $610,000 on September 12, 2002.

Eggert was employed by Merrimac from 1975 until 2000. When his employment ended, he held the position of Technical Director and Executive Vice President and owned, under the ESOP, approximately 9% of Merrimac's outstanding common stock. The ESOP valued Eggert's interest upon his separation at $1,555,500. Eggert received a promissory note dated December 29, 2000, in the amount of $1,555,500, plus 8.5% interest, to be paid in three equal annual installments ("the Eggert Note")[1]. Eggert never received any payments under the promissory note. On January 23, 2003, Eggert sought and obtained a real estate attachment against Merrimac in the United States District Court for the District of Massachusetts in the amount of $1,829,935 ("the Eggert Attachment").

B.   Procedural History

On March 17, 2003, Merrimac filed a petition for protection under Chapter 11 of the Bankruptcy Code. Merrimac commenced the adversary proceeding to which the instant appeal relates on June 20, 2003. On November 7, 2003, the Bankruptcy Court entered a Memorandum of Decision and an Order granting summary judgment in Merrimac's favor on Counts I, III, IV and VI of its amended complaint and confirmed Merrimac's Plan of Reorganization. See

---

[1] While the Bankruptcy Court's memorandum and Appellee's brief contend that the Eggert Note was payable in three annual installments, Appellants' brief asserts that it was payable in five annual installments. The number of payments is not, however, dispositive of the case.

Merrimac Paper Co. v. Harrison (In re Merrimac), 303 B.R. 710 (Bankr. D. Mass. 2003).

The Bankruptcy Court held that 1) it had jurisdiction over the dispute, 2) the Eggert Attachment should be avoided, 3) ERISA does not prevent the subordination of Appellants' claims, 4) mandatory subordination under 11 U.S.C. § 502(b) was proper only to the extent Appellants' claims arose from or were related to ERISA, 5) equitable subordination under 11 U.S.C. § 510(c) was proper, and 6) Appellants' liens should be transferred to the Debtor's estate.

Before the bankruptcy was filed, Defendants commenced an action in the United States District Court for the District of Massachusetts against Merrimac, the ESOP and the administrators and trustees of the ESOP, alleging breach of contract and breach of duties imposed by ERISA.  That action remains pending and does not affect the matter now before this Court.

## II. Analysis

### A. Standard of Review

In bankruptcy appeals, the district court reviews the bankruptcy court's legal determinations de novo and its factual determinations on a clearly erroneous standard.  Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997); Casco Northern Bank v. DN Assoc., 3 F.3d 512, 512 (1st Cir. 1993).

    B.    <u>Bankruptcy Court's Jurisdiction</u>

Appellants challenged the Bankruptcy Court's jurisdiction based on 28 U.S.C. § 157(d), which provides that the district court shall withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States that affect interstate commerce, on the grounds that the action involves ERISA, a federal statute which affects interstate commerce.  The Bankruptcy Court properly noted that the mere pendency of a motion to withdraw does not divest a bankruptcy court of jurisdiction.  Further, on July 8, 2004, this court denied Appellants' motion to withdraw the reference to the Bankruptcy Court, holding that the resolution of the proceeding did not require a substantial and material consideration of ERISA.

    C.    <u>Avoidance of the Eggert Attachment</u>

Merrimac seeks to avoid the Eggert Attachment because it was enforced within 90 days of the filing of Merrimac's petition. The governing statute states, in relevant part, that "the trustee may avoid any transfer of an interest of the debtor in the property...made on or within 90 days before the date of the filing of the petition."  11 U.S.C. § 547(b).  At oral argument before the Bankruptcy Court, Eggert raised no substantive defenses relating to this issue and the Court announced at that hearing that the Eggert attachment would be avoided.

In his appellate brief, Eggert claims that he possessed a statutory, equitable or de facto lien as of December, 2000, when his note was issued. He cites no relevant statute or caselaw to support the claim that he possessed such a lien one month before the attachment was obtained. Eggert's argument is completely unfounded. The Bankruptcy Court was correct in concluding that the Eggert Attachment is avoidable as a preference pursuant to 11 U.S.C. § 547.

D. Equitable Subordination Under § 510(c)

Appellants dispute the Bankruptcy Court's ruling that their claims should be equitably subordinated pursuant to 11 U.S.C. § 510(c) based on their status as claims arising from a stock repurchase agreement. They argue that equitable subordination requires a showing of inequitable conduct and that because this case does not involve so much as an allegation that Appellants engaged in inequitable conduct, equitable subordination is inappropriate. Appellee argues that the Bankruptcy Court properly subordinated the claims because courts have found equitable subordination to be appropriate even without a showing of inequitable conduct when stock repurchase agreements are at issue. (See cases cited below.)

Section 510(c) provides:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may —

(1) under principles of equitable subordination, subordinate

>     for purposes of distribution all or part of an allowed claim
>     to all of part of another allowed claim or all or part of an
>     allowed interest to all or part of another allowed interest;
>     or
>
>     (2) order that any lien securing such a subordinated claim
>     be transferred to the estate.

11 U.S.C. § 510(c). The statutory text does not provide further guidance regarding the "principles of equitable subordination" under which a court may subordinate a claim but the legislative history indicates that Congress intended the phrase to follow existing case law and leave development of the principle to the courts. See United States v. Noland, 517 U.S. 535, 539 (1996); In re SPM Mfg. Corp., 163 B.R. 411, 414 (Bankr. D. Mass. 1994).

The opinion in a Fifth Circuit case, In re Mobile Steel, sets forth the widely-accepted general test for equitable subordination pursuant to § 510(c). Three conditions must be satisfied for equitable subordination to be appropriate:

>     (i) The claimant must have engaged in some type of
>     inequitable conduct.
>     (ii) The misconduct must have resulted in injury to the
>     creditors of the bankrupt or conferred an unfair advantage
>     on the claimant.
>     (iii) Equitable subordination of the claim must not be
>     inconsistent with the provisions of the Bankruptcy Act.

Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 700 (5th Cir. 1977). The Supreme Court has noted that "[t]he District Courts and Courts of Appeals have generally followed the Mobile Steel formulation," Noland, 517 U.S. at 539, and the First Circuit Court of Appeals has expressly adopted it, see Capitol

-7-

Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty), 968 F.2d 1332, 1354 (1st Cir. 1992); Boyajian v. DeFusco (In re Giorgio), 962 F.2d 933, 938-39 (1st Cir. 1988).

Many courts have carved out an exception to the Mobile Steel requirement of inequitable conduct for cases involving payments pursuant to stock redemption agreements. In the First Circuit, such an exception traces back to cases that pre-date the Bankruptcy Code. In 1919, the First Circuit Court of Appeals held that "a stockholder...may not, through an executory contract, cease to be a stockholder, and become a creditor, to share in competition with other creditors in the assets of the corporation when bankrupt." Keith v. Kilmer (In re Nat'l Piano Co.), 261 F. 733, 724 (1st Cir. 1919). The consequence of this rule was that former stockholders who had sold their shares to the issuing corporation before its bankruptcy could not share in the assets pari passu with creditors upon the corporation's bankruptcy. Id. The following year, the court expanded upon the principle. It held that former stockholders holding notes given in consideration for their shares of stock could not share in equal measure with creditors at the time of the corporation's bankruptcy even though the corporation was solvent at the time the notes were drawn and the stock purchase was made in good faith and did not render the corporation insolvent. Matthews

Bros. v. Pullen, 268 F. 827 (1st Cir. 1920).

Recently, district and bankruptcy courts in the First Circuit have relied upon those cases for the proposition that upon bankruptcy, notes given in consideration for a corporation's repurchase of its own stock should be subordinated to claims of other creditors regardless of whether the corporation was solvent at the time of the redemption agreement, whether the agreement was valid under applicable corporate law or whether the transaction was entered into in good faith.  See, e.g., Industrial, Commercial Electrical, Inc. v. Babineau (In re Industrial, Commercial Electrical, Inc.), 2004 WL 1354530, at *11 (Bankr. D. Mass.) (holding that promissory note given to former employee in exchange for tender of his stock should be equitably subordinated pursuant to § 510(c)); In re Main Street Brewing Co., Ltd., 210 B.R. 662, 664-65 (Bankr. D. Mass. 1997) (holding that claims for breach of debtors' agreement to purchase warrant rights are similar to the claim of a former stockholder for payment of the balance due under an agreement whereby the corporation purchased his stock, and both should be subordinated); Ferrari v. Family Mutual Savings Bank (In re New Era Packaging, Inc.), 186 B.R. 329, 335-36 (Bankr. D. Mass. 1995) (recognizing the concept of "no fault equitable subordination" and holding that former shareholders' claims arising from stock redemption agreement should be subordinated); In re SPM Mfg.

-9-

Corp., 163 B.R. 411 (Bankr. D. Mass. 1994) (equitably subordinating stock redemption debt irrespective of creditor misconduct); Liebowitz v. Columbia Packing Co., 56 B.R. 222, 224-25 (D. Mass. 1985) (affirming bankruptcy court's subordination of claim based on stock redemption because "[w]hen a stockholder sells his stock to a corporation and receives cash and a promissory note from the corporation in return, that stockholder does not thereby become a debt creditor who stands on equal footing with trade or general creditors should the corporation become bankrupt"), aff'd, 802 F.2d 439 (1st Cir. 1986) (unpublished table decision).

   The First Circuit Court of Appeals has not addressed the issue of equitable subordination of claims arising from stock repurchase agreements since the Bankruptcy Code was enacted. While it continues to apply the Mobile Steel test in cases not involving stock repurchase agreements, it has not determined whether Mobile Steel's requirement of inequitable conduct applies or is waived in cases involving a corporation's repurchase of its own stock. However, the affirmance of Liebowitz by the First Circuit without published opinion suggests to this Court that it would follow recent decisions in lower courts as well as the rationale behind its 1919 and 1920 opinions and hold that claims based on stock repurchase agreements should be equitably subordinated to those of general creditors.

Other circuits have similarly held that equitable subordination may be appropriate in some cases despite a lack of inequitable conduct on the part of the debtor.  See, e.g., In the Matter of Envirodyne Indus., Inc., 79 F.3d 579, 584 (7th Cir. 1996); Burden v. United States, 917 F.2d 115 (3d Cir. 1990).  But see Sender v. The Bronze Group (In re Hedged-Inv. Assocs., Inc.), 380 F.3d 1292, 1301 (10th Cir. 2004)("We decline to extend the 'no-fault' equitable subordination exception...beyond the tax penalty context."); In re Stern-Slegman-Prins Co., 86 B.R. 994, 1001 (Bankr. W.D. Mo. 1988) ("There is simply no evidence of fraud...Accordingly, Trustees' claim [based on the purchase of the debtor's stock] will not be subordinated to the claims of other general unsecured creditors pursuant to § 510(c).").

The two Supreme Court decisions cited by Appellants are inapt.  United States v. Noland, 517 U.S. 535 (1996) held that a "bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities," id. at 536, but specifically did "not decide today whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated," id. at 543.  In Raleigh v. Illinois Dept. of Revenue, the Court held that

> within the limits of the [Bankruptcy] Code, courts may reorder distributions from the bankruptcy estate....[but may not] make wholesale substitution of underlying law controlling the validity of creditors' entitlements.

530 U.S. 15, 24-25 (2000).  Because neither the Bankruptcy Court

nor this Court substitutes judicial decisions for the underlying, controlling law but instead apply the caselaw of equitable subordination as required by § 510(c), Raleigh lends no support for Appellants' position.

This Court therefore reaches the same conclusion as the Bankruptcy Court below and holds that Appellants' claims should be subordinated pursuant to 11 U.S.C. § 510(c) because they are based on notes related to a stock repurchase agreement.

The Court sympathizes with Appellants. Together they have given over 50 years of service to Merrimac and they did so with the justified expectation of receiving stock or payment for their investment in the ESOP. It is, perhaps, ironic that the doctrine of equitable subordination serves to render their claims lower in priority than those of other creditors. As courts have repeatedly noted, however, stockholders of a corporation do not become debt creditors or stand on equal footing with trade or other creditors by virtue of selling their stock back to the corporation, see In re New Era Packaging, Inc., 186 B.R. at 336, because a corporation acquires nothing of value when it purchases its own stock. In re Main Street Brewing Co., Ltd., 210 B.R. at 664. A stockholder who accepts a promissory note in payment for his stock assumes the risk that the corporation may be insolvent when the note becomes due. Liebowitz, 56 B.R. at 224.

E.   Application of ERISA to Subordination under § 510(c)

Appellants contend that their claims are not subject to equitable subordination because they arose, in part, under ERISA. However, the only claims Appellants assert in the instant action are for non-payment of the Notes, claims which indisputably are governed by the bankruptcy laws.  Appellants' conclusory statements about the equities of this particular case do not extend to ERISA the authority to trump the bankruptcy laws.

As the Bankruptcy Court noted, ERISA specifically provides that:

> [n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supercede any laws of the United States (except as provided in sections 1031 and 1137(c) of this title) or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d).  Subsequent to the enactment of ERISA, Congress enacted the Bankruptcy Code, described as a comprehensive scheme reflecting "a balance, completeness and structural integrity that suggests remedial exclusivity."  Brandt v. Swisstronics, Inc. (In re Shape, Inc.), 135 B.R. 707, 708 (Bankr. D. Me. 1992).  As the Bankruptcy Court properly held, the application of the bankruptcy laws, and specifically 11 U.S.C. § 510, is not altered by the fact that Appellants may have underlying claims based on ERISA.

F.   Transferring Liens to Debtor's Estate

Because Defendants' claims should be subordinated under

§ 510(c), the Bankruptcy Court was correct in determining that Appellants' liens, to the extent they exist and are not avoided as preferential, should be transferred to the Debtor's estate in accordance with 11 U.S.C. § 510(c)(2).

    G.    <u>Mandatory Subordination under § 510(b)</u>

Section 510(b) of Chapter 11 of the United States Code provides that:

> a claim arising from rescission of a purchase or sale of a security of the debtor...for damages *arising from* the purchase or sale of such a security...shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis supplied). The Bankruptcy Court adopted what has been referred to as the narrow approach for interpreting the ambiguous phrase "arising from" in this statute. According to the narrow approach, only claims for actionable conduct (e.g. fraud, breach of contract or, in this case, ERISA violations) which occurred at the time of the purchase or sale of stock are deemed to "arise from" the purchase or sale of the security and only these claims should be subordinated pursuant to § 510(b). <u>See, e.g.</u>, <u>Montgomery Ward Holding Corp.</u> v. <u>Schoeberl</u> (<u>In re Montgomery Ward Holding Corp.</u>), 272 B.R. 836 (Bankr. D. Del. 2001) and cases cited therein.

Courts following the broader approach to § 510(b) hold that the requirement that a claim "arise from" the purchase or sale of

a security mandates that there be some causal connection between the purchase or sale and the claim, but the claim need not originate at the time of the purchase or sale of the stock. Thus, claims for breach of a stock repurchase agreement, which would not have arisen but for the underlying security purchase or sale, may "arise from" the purchase or sale of the security even though the claims did not accrue contemporaneously with the purchase or sale. See, e.g., Allen v. Geneva Steel Co. (In re Geneva Steel), 281 F.3d 1173 (10th Cir. 2002); Baroda Hill Invs. v. Telegroup (In re Telegroup), 281 F.3d 133, 136 (3d Cir. 2002); Weissmann v. Pre-Press Graphics Co. (In re Pre-Press Graphics Co.), 307 B.R. 65 (N.D. Ill. 2004).

Although the Bankruptcy Court noted that cases adopting the broad approach have involved claims by individuals who were still shareholders at the time of suit while the current case involves claims by former shareholders, the language of the statute does not contemplate such a distinction. The First Circuit Court of Appeals has not had occasion to decide the scope of claims that should be subordinated pursuant to § 510(b).

The Bankruptcy Court in this case, following the narrow approach, held that Appellants' claims must be subordinated to the extent they are based on ERISA violations but that the claims cannot be subordinated pursuant to § 510(b) to the extent they are for non-payment of stock redemption notes. The broad

approach, on the other hand, would dictate that all of Appellants' claims in this action must be subordinated pursuant to § 510(b) because they all had a sufficient nexus to the sale of securities that it can be said they arose from such sale within the meaning of § 510(b).

In this appeal, Appellee does not contest the ruling of the Bankruptcy Court that Appellants' claims arising from default under the Notes are not subject to subordination under § 510(b). Thus, it does not dispute the Bankruptcy Court's adoption of the narrow approach. Because the issue of whether the broad or narrow approach should be used in this circuit is not before this Court, it offers no opinion on which approach is preferable.

Appellants argue that the Bankruptcy Court was incorrect in ruling that their ERISA claims must be subordinated pursuant to § 510(b). They argue that their ERISA claims are not based on their status as shareholders and therefore are not subject to subordination. However, as the Bankruptcy Court noted, the only conceivable basis for Appellants' ERISA claims is their sale of stock. ERISA does not override the express language of § 510(b) and hence Appellants' claims arising under their ERISA claims, if any, must be subordinated pursuant to § 510(b).

-16-

**ORDER**

Based upon the foregoing memorandum, the Bankruptcy Court's denial of Summary Judgment is **AFFIRMED** and this appeal is **DISMISSED**.

In fact, the decision of the Bankruptcy Court generated two appeals which were docketed in this court as Bankruptcy Appeal Nos. 03-40282 and 03-40288.  Both appeals raise identical issues and, although Bankruptcy Appeal No. 03-40288 was closed for administrative purposes, to the extent any appeal is pursued under that docket number, this ruling applies equally to it.

**So ordered.**

                                                   /s/ Nathaniel M. Gorton
                                                  Nathaniel M. Gorton
                                                  United States District Judge

Dated: November 10, 2004