UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | |
| MERRIMAC PAPER COMPANY, INC., ) | Chapter 11 |
| Et al. ) | Case No. 03-41477-JBR through |
| ) | Case No. 03-41479-JBR |
| Debtors ) | |
| ) | Jointly Administered |

## AFFIDAVIT OF DANIEL MIRSKI IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION OF MERRIMAC PAPER COMPANY, INC., HOLYOKE CARD COMPANY, INC., AND AQUAMAC CORPORATION, AS MODIFIED

I, Daniel Mirski, hereby submit the following affidavit:

1.    I am the chief financial officer of Merrimac Paper Company, Inc.

("MPC"), Holyoke Card Company, Inc. ("HCC") and Aquamac Corporation ("Aquamac"

and together with MPC and HCC, the "Debtors").   I have served in such capacity since

April 2003.

2.    On March 17, 2003 (the "Petition Date"),[1] each of the above-referenced

Debtors commenced a case under the Bankruptcy Code in this Court.

3.    MPC owns and operates a paper mill in Lawrence, Massachusetts and is

currently owned nearly hundred percent (100%) by its employees and former employees

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the First Amended Joint Plan of Reorganization of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation, as Modified.

pursuant to an employee stock ownership plan ("ESOP").  As of the Petition Date, MPC had three wholly-owned subsidiaries: HCC, Aquamac, and PPC.

4.    In May 2000, MPC acquired the assets of Holyoke Card and Paper Company ("HCP"), based in Springfield, Massachusetts.  The name of the acquiring entity was later changed to Holyoke Card Company, Inc.  HCC specializes in lamination, coating, and embossing of paper and paperboard.

5.    Aquamac operates a hydroelectric power producing facility and equipment adjacent to, and for the benefit of, the MPC facility. Aquamac operates four waterwheels, three of which it owns and one of which is leased from MPC.

6.    PPC formerly operated a paper mill in Pepperell, Massachusetts.  PPC terminated operations in year 2002, and its assets were sold pursuant to a secured party sale.  PPC is not a debtor before this Court.

7.    On or about August 4, 2003, the Debtors filed their First Amended Joint Plan of Reorganization of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation  (as modified, the "Plan") and related Disclosure Statement.

8.    On or about September 8, 2003, this Court entered an order approving the Disclosure Statement and scheduling a hearing on Plan confirmation for November 5, 2003.  On October 24, 2003, the Debtor filed certain modifications to the Plan and, on October 27, 2003, the Debtor filed its Supplement to the Plan.

9.    I submit this Affidavit in support of confirmation of the Plan. I have personal knowledge of the facts contained in this Affidavit and, if I were called upon to testify, I would testify competently to such facts.

### Overview of the Plan

10.     The Plan provides for the reorganization and continued operation of the Debtors.   Under the Plan, the primary secured creditor of the Debtors, Summitbridge Global Investments, LLC ("Summit"), shall be granted an Allowed Secured Claim in the amount of $11,000,000 to be repaid pursuant to a term note and a revolving credit facility payable to Summit or its designee.   Summit or its designee shall be issued one hundred percent (100%) of the stock of the Reorganized MPC in consideration of its waiver of its Unsecured Deficiency Claim, totaling approximately $8,000,000.   Summit's stock interest may be diluted for management incentive options.   The Reorganized MPC shall continue to be the sole owner of its subsidiaries.

11.     Nonpriority Unsecured creditors (Class 6) shall be paid $425,000 upon the Effective Date and an additional $125,000 within one year of the Effective Date.   A Class 6 Trust shall be established, and the Class 6 Trustee shall be responsible for, among other things, resolving disputed Nonpriority Unsecured Claims and distributing funds to Class 6 creditors.

12.     The Plan provides for substantive consolidation of the Debtors for distribution purposes only.

Substantive Consolidation:  The following factors weigh in favor of the substantive consolidation of the Debtors for distribution purposes:

(i)     Common Officers and Directors:  The Debtors share common officers and directors. Donald Plummer is the president and treasurer of each of the Debtors. I serve as chief financial officer. Donald Plummer and John T. Leahy are directors for each of the Debtors;

(ii)     Consolidated Financial Reporting:  The Debtors prepare consolidated financial statements and consolidated tax returns;

3

(iii)    <u>Single Credit Facility:</u>    Prior to the Petition Date, the Debtors utilized a single revolving credit facility with Fleet, and later Summit. Advances were made based upon a single borrowing base certificate. Such advances were forwarded to a single account maintained by MPC; disbursements were then made by MPC to other Debtors as necessary to fund operations. MPC carried the entire loan indebtedness on its financial statements. Each of the subsidiaries guaranteed the MPC indebtedness and pledged its assets to secure such indebtedness. Loan advances and repayments among the Debtors were accounted for through extensive use of intercompany entries;

(iv)    <u>Single Payment of Salaried Personnel:</u>  Certain salaried persons were employed by MPC, and such employees were compensated by MPC even though such persons provided services for HCC and Aquamac as well. The benefits derived by the subsidiaries from such services were also adjusted through the intercompany accounting mechanism;

(v)    <u>Use of Leased Property:</u>  In certain instances, HCC may also have been given use of leased property which was recorded on the books and records of MPC.

13.    <u>Best interest of Creditors Test</u>. The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code, which requires that each holder of an impaired claim or interest that has not accepted the Plan receive or retain under the Plan on account of such claim or interest property of a value that is not less than the amount the holder would receive in a Chapter 7 liquidation. Specifically:

a.    I, in concert with other members of the Debtors' senior management, prepared the liquidation analysis appended as Exhibit C to the Disclosure Statement. The liquidation analysis represents an approximation of the amount that creditors of the Debtors would recover in a hypothetical chapter 7 liquidation.

b.    Assumptions utilized in preparing the liquidation analysis respecting asset valuations were based upon consultation with key employees of the Debtors, documentary evidence, and other best available information. Cost assumptions were made based upon past experience and in consultation with the Debtors' agents. I believe that the assumptions underlying the Debtors' liquidation analysis are reasonable.

c.    The liquidation analysis demonstrates that confirmation of the Plan provides each creditor of the Debtors with a recovery that is not less than such holder would receive in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

d.    For those classes with less than one hundred percent (100%) acceptance of the Plan, the liquidation analysis demonstrates that the recovery under the Plan equals or exceeds the recovery dissenting parties would receive in a Chapter 7 liquidation.

14.    Feasibility. The Plan provides for the reorganization of the Debtors and the continuation of the Debtors' businesses. The source of funding for payments required under the Plan and for continued operations shall be funds on hand as of the Effective Date and availability under the post-confirmation revolving credit facility with Summit. The Debtors presently have on hand the approximate sum of $2,100,000. A similar amount is expected to be on hand as of the Effective Date, projected to be on or about November 15, 2003. After payment of Professional Fee Claims, Other Priority Claims, Priority Tax Claims, and initial payments to Class 6 (Nonpriority Unsecured) creditors,

the Debtors anticipate having available in excess of $1,000,000. These residual funds should provide adequate initial funding for working capital needs.

15.    I and other members of the Debtors' senior management prepared financial projections which were appended to the Disclosure Statement, including balance sheets, income statements, and statements of cash flow through the period ending December 31, 2006. In assembling the data required to prepare the projections, the Debtors considered, among other things: (a) anticipated cost savings from a renegotiation of MPC's collective bargaining agreement with its unionized employees; (b) other feasible expense reductions; and (c) existing sale orders and likely future sales given the Debtors' successful emergence from Chapter 11 and an anticipated gradual improvement in general economic conditions. It is my opinion that the projections developed by the Debtors are reasonable and achievable, and that confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors' business affairs.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated:  *11-3-03*

_Daniel Mirski_

Daniel Mirski, chief financial officer

390092

6

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| MERRIMAC PAPER COMPANY, INC., | ) | Chapter 11 |
| Et al. | ) | Case No. 03-41477-JBR through |
| | ) | Case No. 03-41479-JBR |
| **Debtors** | ) | |
| | ) | Jointly Administered |

### AFFIDAVIT OF DONALD PLUMMER IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION OF MERRIMAC PAPER COMPANY, INC., HOLYOKE CARD COMPANY, INC., AND AQUAMAC CORPORATION, AS MODIFIED

I, Donald Plummer, hereby submit the following affidavit:

1.    I am the President of Merrimac Paper Company, Inc. ("MPC"), Holyoke Card Company, Inc. ("HCC") and Aquamac Corporation ("Aquamac" and together with MPC and HCC, the "Debtors"). I have served in such capacity since May 2002.

2.    On March 17, 2003 (the "Petition Date"),[1] each of the above-referenced Debtors commenced a case under the Bankruptcy Code in this Court.

3.    MPC owns and operates a paper mill in Lawrence, Massachusetts and is currently owned nearly hundred percent (100%) by its employees and former employees pursuant to an employee stock ownership plan ("ESOP"). As of the Petition Date, MPC had three wholly-owned subsidiaries: HCC, Aquamac, and PPC.

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the First Amended Joint Plan of Reorganization of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation, as Modified.

4.       In May 2000, MPC acquired the assets of Holyoke Card and Paper Company ("HCP"), based in Springfield, Massachusetts. The name of the acquiring entity was later changed to Holyoke Card Company, Inc. HCC specializes in lamination, coating, and embossing of paper and paperboard.

5.       Aquamac operates a hydroelectric power producing facility and equipment adjacent to, and for the benefit of, the MPC facility. Aquamac operates four waterwheels, three of which it owns and one of which is leased from MPC.

6.       PPC formerly operated a paper mill in Pepperell, Massachusetts. PPC terminated operations in year 2002, and its assets were sold pursuant to a secured party sale. PPC is not a debtor before this Court.

7.       On or about August 4, 2003, the Debtors filed their First Amended Joint Plan of Reorganization of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation (as modified, the "Plan") and related Disclosure Statement.

8.       On or about September 8, 2003, this Court entered an order approving the Disclosure Statement and scheduling a hearing on Plan confirmation for November 5, 2003. On October 24, 2003, the Debtor filed certain modifications to the Plan and, on October 27, 2003, the Debtor filed its Supplement to the Plan.

9.       I submit this Affidavit in support of confirmation of the Plan. I have personal knowledge of the facts contained in this Affidavit and, if I were called upon to testify, I would testify competently to such facts.

## Overview of the Plan

10.    The Plan provides for the reorganization and continued operation of the Debtors.    Under the Plan, the primary secured creditor of the Debtors, Summitbridge Global Investments, LLC ("Summit"), shall be granted an Allowed Secured Claim in the amount of $11,000,000 to be repaid pursuant to a term note and a revolving credit facility payable to Summit or its designee.  Summit or its designee shall be issued one hundred percent (100%) of the stock of the Reorganized MPC in consideration of its waiver of its Unsecured Deficiency Claim, totaling approximately $8,000,000.  Summit's stock interest may be diluted for management incentive options.  The Reorganized MPC shall continue to be the sole owner of its subsidiaries.

11.    Nonpriority Unsecured creditors (Class 6) shall be paid $425,000 upon the Effective Date and an additional $125,000 within one year of the Effective Date.   A Class 6 Trust shall be established, and the Class 6 Trustee shall be responsible for, among other things, resolving disputed Nonpriority Unsecured Claims and distributing funds to Class 6 creditors.

12.    The Plan provides for substantive consolidation of the Debtors for distribution purposes only.

13.    Based upon my involvement in the Plan process in these cases, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, that the Plan was proposed in good faith and that the Debtors, acting through their partners, officers, directors and professionals, conducted themselves in a manner that complies with applicable law in relation to the formulation and negotiation of, and voting on, the Plan.

3

**Classification of Claims and Equity Interests**

14.    The Plan contains the following classification scheme:

| | |
|---|---|
| Class 1 | Summit Secured Claim |
| Class 2 | City of Lawrence Secured Claim |
| Class 3 | City of Springfield Secured Claim |
| Class 4 | Other Secured Claims |
| Class 5 | Other Priority Claims |
| Class 6 | Nonpriority Unsecured Claims |
| Class 7 | Stock Repurchase Claims |
| Class 8 | MPC Equity Interests |
| Class 9 | HCC Equity Interests |
| Class 10 | Aquamac Equity Interest |

15.    <u>Impairment</u>. The holders of Claims and Equity Interests in Classes 1, 2, 3, 4, 6, 7, 8, 9, and 10 are impaired. The holders of Claims and/or Equity Interests in Classes 4 and 5 are unimpaired.   Classes 7 (Stock Repurchase Claims) and 8 (MPC Equity Interests) shall receive nothing under the Plan and are deemed to have rejected the Plan.  The remaining Classes of Claims and Equity Interests have either voted to accept the Plan or are deemed to have accepted the Plan.

4

**The Plan Complies with Bankruptcy Code Section 1129(a)**

16.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a) (1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a) (1).

    a.    <u>Proper Classification (11 U.S.C. §§1122, 1123(a) (1))</u>. The Plan designates ten (10) Classes of Claims and Equity Interests, with the exception of Administrative Expense Claims and Priority Tax Claims.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class, and such classification is therefore consistent with Section 1122 of the Bankruptcy Code.

    b.    <u>Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article IV of the Plan specifies that Classes 4 and 5 are unimpaired under the Plan, thereby satisfying Section 1123(a)(2) of the Bankruptcy Code.

    c.    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a) (3))</u>. Article IV of the Plan specifies the treatment of the impaired Classes of Claims (Classes 1, 2, 3, 4, 6, and 7) and Equity Interests (Classes 8, 9, and 10), thereby satisfying Section 1123(a)(3) of the Bankruptcy Code.

    d.    <u>No Discrimination (11 U.S.C. § 1123(a) (4))</u>. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a different treatment of such Claim or Equity Interest, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

e.    Implementation of the Plan (11 U.S.C. § 1123(a) (5)). Article V of the Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying Section 1123(a)(5) of the Bankruptcy Code. Article V contains, among other things, the following provisions: (1) the assent by Summit, the holder of a Lien upon the Debtors' cash collateral, to the disbursement of its collateral for the payment of Plan-related obligations based upon the Debtors' representations respecting available funds; (2) the substantive consolidation of the Debtors for distribution purposes only; (3) the establishment of a Class 6 Trust and Class 6 Trustee to resolve disputed Nonpriority Unsecured Claims, pursue certain avoidance actions, and distribute funds to such Claim holders; (4) the cancellation of Equity Interests and issuance of New Common Stock and (5) the establishment of post-confirmation employee profit sharing plans and employment agreements for senior officers.

Substantive Consolidation:  The following factors weigh in favor of the substantive consolidation of the Debtors for distribution purposes:

(i)    Common Officers and Directors:  The Debtors share common officers and directors.  I am the president and treasurer of each of the Debtors.  Daniel J. Mirski serves as chief financial officer.  I and John T. Leahy are directors for each of the Debtors;

(ii)    Consolidated Financial Reporting:   The Debtors prepare consolidated financial statements and consolidated tax returns;

(iii)    Single Credit Facility:   Prior to the Petition Date, the Debtors utilized a single revolving credit facility with Fleet, and later Summit. Advances were made based upon a single borrowing base certificate. Such advances were forwarded to a single account maintained by MPC; disbursements were then made by MPC to other Debtors as necessary to fund operations.  MPC carried the entire loan indebtedness on its financial statements. Each of the subsidiaries guaranteed the MPC indebtedness

6

and pledged its assets to secure such indebtedness. Loan advances and repayments among the Debtors were accounted for through extensive use of intercompany entries;

(iv)    Single Payment of Salaried Personnel: Certain salaried persons were employed by MPC, and such employees were compensated by MPC even though such persons provided services for HCC and Aquamac as well. The benefits derived by the subsidiaries from such services were also adjusted through the intercompany accounting mechanism;

(v)    Use of Leased Property: In certain instances, HCC may also have been given use of leased property which was recorded on the books and records of MPC.

f.    Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). Article V of the Plan provides for necessary modifications to the by-laws and articles of incorporation for the Debtors, including a provision prohibiting the issuance of nonvoting securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

g.    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). The Plan and the Supplement to the Plan identify the post-confirmation Board of Directors, the senior officers of the Reorganized Debtors and the terms of compensation for such officers, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

h.    Impairment of Classes (11 U.S.C. § 1123(b)(1)). In accordance with Section 1123(b)(1) of the Bankruptcy Code, Article IV of the Plan impairs or leaves unimpaired, as the case may be, each class of Claims and Equity interests under the Plan.

i.    <u>Treatment of Executory Contracts and Unexpired Leases (11</u>

<u>U.S.C. § 1123(b)(2))</u>. Article VIII of the Plan provides that any prepetition

executory contract or unexpired lease which (i) has not expired by its own terms

on or prior to the Confirmation Date, (ii) has not been assumed or rejected with

the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is

not the subject of a motion to assume or reject which is pending at the time of the

Confirmation Date, or (iv) is not designated in the Plan or Supplement as being an

executory contract or unexpired lease to be assumed, shall be deemed rejected on

the Confirmation Date.  Thus, the Plan is in compliance with Section 1123(b)(2)

of the Bankruptcy Code.

j.    <u>Retention, Enforcement, and Settlement of Claims Held by the</u>

<u>Debtors (11 U.S.C. § 1123(b)(3))</u>.  Article VI of the Plan provides that except as

otherwise provided in the Plan, the Confirmation Order, or any documents entered

into pursuant to the Plan, all Causes of Action shall be preserved and retained for

enforcement by the Reorganized Debtors after the Effective Date.   Article VI of

the Plan also provides that the HCC Avoidance Claims (claims against parties

other than Summit arising out of MPC's acquisition of HCC in year 2000) shall

vest in the Class 6 Trustee.  Claims for recovery of preferential transfers are

extinguished under Article VI, except for claims to be asserted defensively and

claims arising in the litigation against Ralph Harrison and Alan Eggert.

Accordingly, the Plan complies with Section 1123(b)(3) of the Bankruptcy Code.

k.    <u>Rights of Holders of Claims (11 U.S.C. § 1123(b)(5))</u>. The Plan

proposes to modify the rights of secured creditors in Classes 1 through 4 and the

rights of unsecured creditors in Classes 6 and 7, as permitted by Section 1123(b)(5) of the Bankruptcy Code.

l.    <u>Other Provisions Not Inconsistent with Title 11(11 U.S.C. §</u> <u>1123(b)(6))</u>. In accordance with Section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code.

17.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. §</u> <u>1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code.

18.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a) (3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. The Plan has been proposed with the legitimate and honest purpose of reorganizing the Debtors' assets and affairs and making appropriate distributions to the Debtors' creditors pursuant to the Plan. The Plan is based on extensive arms-length negotiations between, among others, the Debtors, the Committee, and Summit. These negotiations lead to the formulation of the Plan and subsequent modification, which provides independent evidence of the good faith of the Debtors in proposing the Plan.  In addition to effectuating a reorganization of the Debtors' business affairs and maximizing the preservation of enterprise value, confirmation of the Plan will allow the Debtors to continue the employment of approximately 160 individuals in Lawrence and Springfield, Massachusetts and provide a greater recovery for creditors than would be available in a liquidation.

19.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a) (4))</u>. Any payments made or to be made by the Debtors or the Reorganized Debtors for services or for costs and expenses accruing prior to the Effective Date in connection with these cases have been approved by, or are subject to the approval of the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.    As set forth in Article III of the Joint Plan, all Professional Fee Claims will be subject to the Court's approval.    In addition, Article XII of the Joint Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses by Professional Fee Claim holders.

20.    <u>Identification of Directors, Officers, and Insiders (11 U.S.C. § 1129(a) (5))</u>. The Debtors have complied with Section 1129(a)(5) of the Bankruptcy Code by disclosing (a) the identity where known, and the procedure for selecting, where not, and other information regarding any individual proposed to serve, after confirmation of the Plan, as an officer or director of the Reorganized Debtors and (b) the identity and nature of compensation of any insider who will be employed or retained by the Debtors or the Reorganized Debtors after confirmation of the Plan. The appointment of such individuals is consistent with the interests of the creditors and Equity Interest holders of the Debtors and with public policy.

21.    <u>No Rate Changes (11 U.S.C. § 1129(a) (6))</u>. No governmental regulatory commission has jurisdiction over rates charged by the Debtors. Thus, Section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 cases.

22.    <u>Best interest of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code, which requires that each holder of an

10

impaired claim or interest that has not accepted the Plan receive or retain under the Plan on account of such claim or interest property of a value that is not less than the amount the holder would receive in a Chapter 7 liquidation. Specifically:

a.      I, in concert with other members of the Debtors' senior management, prepared the liquidation analysis appended as Exhibit C to the Disclosure Statement. The liquidation analysis represents an approximation of the amount that creditors of the Debtors would recover in a hypothetical chapter 7 liquidation.

b.      Assumptions utilized in preparing the liquidation analysis respecting asset valuations were based upon consultation with key employees of the Debtors, documentary evidence, and other best available information. Cost assumptions were made based upon past experience and in consultation with the Debtors' agents.   I believe that the assumptions underlying the Debtors' liquidation analysis are reasonable.

c.      The liquidation analysis demonstrates that confirmation of the Plan provides each creditor of the Debtors with a recovery that is not less than such holder would receive in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

d.      For those classes with less than one hundred percent (100%) acceptance of the Plan, the liquidation analysis demonstrates that the recovery under the Plan equals or exceeds the recovery dissenting parties would receive in a Chapter 7 liquidation.

23. _Acceptance by Certain Classes (11 U.S.C. § 1129(a) (8))_. Classes 7 and 8 are impaired and are deemed to have rejected the Plan.

24. _Treatment of Administrative Claims, Other Priority Claims and Priority Tax Claims (11 U.S.C. § 1129(a) (9))_. Article III of the Plan provides for the payment of Administrative Claims, Other Priority Claims, and Priority Tax Claims on the later of the Effective Date or the date in which such Claim is allowed, thereby satisfying Section 1129(a)(9) of the Bankruptcy Code.

25. _Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))_. More than one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider of the Debtors holding a Claim in such Class, thereby satisfying Section 1129(a)(10) of the Bankruptcy Code. The Report of Plan Voting filed herewith indicates that Classes 1, 2, and 6 have voted to accept the Plan as modified.

26. _Feasibility (11 U.S.C. § 1129(a) (11))_. The Plan provides for the reorganization of the Debtors and the continuation of the Debtors' businesses. The source of funding for payments required under the Plan and for continued operations shall be funds on hand as of the Effective Date and availability under the post-confirmation revolving credit facility with Summit. The Debtors presently have on hand the approximate sum of $2,100,000. A similar amount is expected to be on hand as of the Effective Date, projected to be on or about November 15, 2003. After payment of Professional Fee Claims, Other Priority Claims, Priority Tax Claims, and initial payments to Class 6 (Nonpriority Unsecured) creditors, the Debtors anticipate having available in

12

excess of $1,000,000. These residual funds should provide adequate initial funding for working capital needs.

27.    I and other members of the Debtors' senior management prepared financial projections which were appended to the Disclosure Statement, including balance sheets, income statements, and statements of cash flow through the period ending December 31, 2006. In assembling the data required to prepare the projections, the Debtors considered, among other things: (a) anticipated cost savings from a renegotiation of MPC's collective bargaining agreement with its unionized employees; (b) other feasible expense reductions; and (c) existing sale orders and likely future sales given the Debtors' successful emergence from Chapter 11 and an anticipated gradual improvement in general economic conditions. It is my opinion that the projections developed by the Debtors are reasonable and achievable, and that confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors' business affairs.

28.    Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date in accordance with Article III of the Plan, thereby satisfying Section 1129(a)(12) of the Bankruptcy Code.

29.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 1129(a)(13) of the Bankruptcy Code requires the continuation of retiree benefits at levels established pursuant to Section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated itself to provide such benefits. The Confirmation Order shall provide that any retiree benefits which the Debtors are contractually or

legally obligated to provide shall continue, subject to any and all rights of the Debtors under applicable law, and, therefore, the Plan satisfies Section 1129(a)(13) of the Bankruptcy Code.

30.    Compliance with Nonconsensual (Cram Down) Provisions (11 U.S.C. § 1129(b)). Class 7 (Stock Repurchase Claims) and Class 8 (MPC Equity Interests) shall not receive or retain any Claims or property under the Plan on account of their claims or interests and, accordingly, are deemed to have rejected the Plan. The Plan does not discriminate against the dissenting Classes and is fair and equitable to such Classes. In support of this assertion, the affiant refers to the memorandum of law in support of Plan confirmation submitted contemporaneously herewith. Accordingly, Section 1129(b) of the Bankruptcy Code is satisfied.

### The Plan Complies with Bankruptcy Rule 3016(a)

31.    Identification of Plan Proponent (Fed. R. Bankr. P. 3016(a)). The Plan satisfies Bankruptcy Rule 3016(a) by identifying the date of the Plan and the Debtors as the proponents of the Plan.

### The Plan Complies with Bankruptcy Code Section 1129(d)

32.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental unit has objected to confirmation of the Plan on this basis, thereby satisfying Section 1129(d) of the Bankruptcy Code.

14

**The Plan Complies with Bankruptcy Code Section 1125(e)**

33.    Good Faith Solicitation; Good Faith Sale of Securities (11 U.S.C. § 1125(e)). The Debtors, their respective officers, directors, employees, members, agents, accountants, business consultants, representatives, attorneys, and advisors, through their participation in the negotiation and preparation of the Plan and the Disclosure Statement and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith. The Debtors and their respective officers, directors, employees, members, agents, accountants, business consultants, representatives, attorneys, and advisors, have participated in the Chapter 11 cases in compliance with the applicable provisions of the Bankruptcy Code, and each was a "participant" acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the issuance of securities offered under the Plan pursuant to Section 1125(e) of the Bankruptcy Code, and each should be entitled to the full protections of 11 U.S.C. § 1125(e).

**CONCLUSION**

Based on the foregoing, I believe the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code and should be confirmed.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

*Donald R. Plummer*

Donald Plummer, president

389635

15